Bank v. Busby.

MERCANTILE BANK OF MEMPHIS *v.* B. I. BUSBY *et al.*

(*Jackson.* April Term, 1908.)

1. **BILLS AND NOTES.** Indorsers on a note given to raise money are liable as joint makers without notice of dishonor.

   Where the stockholders of a corporation indorse a note made by one of their number to the order of himself, given to raise money for it and for their own benefit, with the understanding that the note bound all the indorsing stockholders equally, they are all liable as joint makers, and they are not entitled to notice of dishonor. (*Post, pp.* 653-659.)

   Cases cited and approved: Bank v. Jefferson, 92 Tenn., 537; Assurance Society v. Edmonds, 95 Tenn., 53; Bank v. Lumber Co., 100 Tenn., 479; Logan v. Ogden, 101 Tenn., 392.

2. **SAME.** Real contract can be shown under a blank indorsement before delivery, when.

   Under our negotiable instruments law (Acts 1899, ch. 94, secs. 63 and 64), an indorser of a note in blank before delivery is *prima facie,* but not absolutely, liable as indorser, for the real contract can be shown, and, as between the immediate parties, it is not necessary that the indorsement should be accompanied by appropriate words in writing showing an intention to be bound in some other capacity. (*Post, pp.* 659-666.)

   Acts cited and construed: Acts 1899, ch. 94, secs. 63 and 64.

   Numerous cases in other jurisdictions cited in the opinion, on pages 661-664.

3. **SAME.** Indorsers when joint makers are liable without notice of dishonor.

   Where the indorsers on a note in blank before delivery are joint makers as shown in the first headnote, they are not entitled to notice of dishonor under our negotiable instruments law (Acts 1899, ch. 94, sec. 115), and they are liable as makers without any notice of dishonor, because the note was made and accepted for their accommodation. (*Post, pp.* 666, 667.)

   Act cited and construed: Act 1899, ch. 94, sec. 115.

Bank v. Busby.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
F. H. HEISKELL, Chancellor.

TURLEY & TURLEY, for complainant.

CARUTHERS EWING, C. J. MCSPADDEN, CARY &
ROGERS, and LEHMAN, GATES & LEHMAN, for defend-
ants.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

The original bill herein was filed on the 23d of May,
1906, against B. I. Busby, C. D. Williford, C. B. Black-
burn, and H. L. Williford, on the following note:

"$9,000.  Memphis, Tenn., Sep. 2, 1905.

"Six months after date I promise to pay to the order
of myself Nine Thousand Dollars at Mercantile Bank,
value received.  B. I. BUSBY."

The note had the following names indorsed on the
back thereof in the following order, viz.:

"B. I. Busby.

"B. I. Busby Co., by B. I. Busby, Pres.

"C. B. Blackburn, Laconia, Ark.

"H. L. Williford.

"Pay American Exchange National Bank, New York, N. Y., or order.

"Mercantile Bank of Memphis, Tenn., W. A. Smith, Cashier, C. H. Raine, Pres."

There was a credit of $1,000 on this note dated April 5, 1905, and this suit was brought to recover the balance due, with interest.

The bill showed that the note was presented for payment at the Mercantile Bank, where it was payable on March 2, 1906, and payment refused, whereupon notice of nonpayment was given to the various parties. The notice to C. B. Blackburn was deposited in the post office at Memphis, Tennessee, on March 2, 1906, addressed to E. B. Blackburn, Laconia, Arkansas. On June 26, 1906, the defendant C. B. Blackburn filed an answer denying his liability as indorser on said note for the reason that notice was not given him of the protest of said note for nonpayment, and also setting up other defenses in his answer, which it is unnecessary to mention. It was averred in his answer that the protest was invalid, and that due notice had not been given him. Defendant Blackburn insisted that he had not resided at Laconia, Arkansas, for five or six years, but that he had been a resident of Doran, Phillips county, Arkansas. The answer averred that the notice of protest was addressed to him at Laconia, Arkansas, and that the first notice he had thereof was "some weeks thereafter when the same was found by respondent at the house where respondent's wife lives in the city of

Memphis, and where respondent stays when in said city." The answer further avers that said notice was mailed "to respondent from Laconia on March 2, 1906, by a relative living at Laconia." The answer denied that complainant was the legal holder of the note or was entitled to maintain an action thereon. On the 12th of July, 1906, by permission of the court an amended bill was filed, wherein it was alleged that:

"The B. I. Busby Co. was a Tennessee corporation, in which B. I. Busby, C. D. Williford, C. B. Blackburn, and H. L. Williford were all largely interested. That such parties desired to raise money for it and for their own benefit. With this in view the note in question was made in the form in which it appears. All of the indorsements thereof were made before the note was attempted to be used, and, after being so completely executed, the same was discounted by complainants. The money so borrowed went into the business of B. I. Busby Co., in which the various parties were interested."

The theory of the amended bill is that each and all of the parties to said note are equally bound thereof, and that no protest was necessary and no notice of nonpayment had to be given. On August 27, 1906, C. B. Blackburn filed an answer to the amended bill wherein he admitted that he had been a stockholder in the B. I. Busby Company, but claimed that he was not otherwise interested therein, and insisted he was an accommodation indorser on said note. The answer denied that C. B. Blackburn had ever waived protest and notice, or admitted liability on the note after it fell due.

The Willifords also filed their answers to the bill in which they claimed to be accommodation indorsers on said note. Proof was taken, and on the hearing the chancellor decreed:

"That the $9,000 note is unpaid, except that $1,000 was paid thereon on April 5, 1906, and that another payment of $2,301.16 was made thereon September 5, 1907, which payments are admitted by complainant. This last payment was a collection made of the *Columbia Star Milling Co.* v. *B. I. Busby,* before mentioned. Thereupon it is held and decreed as follows:

"(1) That the $9,000 note before mentioned was given for a debt or obligation and for the benefit of the B. I. Busby Co., a corporation in which the said B. I. Busby, C. D. Williford, C. B. Blackburn, and H. L. Williford were stockholders.

"(2) That B. I. Busby, C. D. Williford, C. B. Blackburn, and H. L. Williford were all in law joint makers of said $9,000 note and all liable therefor, and no protest of same was necessary.

"(3) That the negotiable instruments law of Tennessee did not change or affect the liability of the parties to the $9,000 note, but all the parties are liable thereunder as above stated."

It was therefore held and decreed that the Mercantile Bank of Memphis have and recover of B. I. Busby, B. I. Busby & Co., C. B. Blackburn, and H. L. Williford the sum of $6,359.75, said amount being the principal and interest now due on the $9,000 note as aforesaid. The

judgment was against all of said parties jointly and against each of them severally. It should have been stated that no decree was pronounced against C. D. Williford for the reason he had been adjudged a bankrupt in the district court of the United States for the southern district of New York, and discharged from all debts due by him on April 26, 1907, and that thereby he was discharged from all liability on the $9,000 note in suit.

The defendant Blackburn appealed from the decree of the chancellor, and has assigned numerous errors, most of which are based on the action of the chancellor in sustaining the exception of the complainant to certain questions and answers in the deposition of C. B. Blackburn. The main assignment of error, however, is that the chancellor erred in rendering a decree for complainants against the defendant Blackburn and in refusing to dismiss the bill as to him.

The main inquiry presented on the record is whether or not the defendant Blackburn was a joint maker of the note in question, or whether he was an accommodation indorser in the sense of the law merchant. A history of the note in suit will throw much light on this question. The record discloses that the predecessor of the B. I. Busby corporation was the B. I. Busby Company. This company was a firm composed of C. D. Williford and B. I. Busby. As already stated, it was succeeded by the B. I. Busby Company, corporation, chartered in February, 1904. The stockholders and their holdings were as follows:

120 Tenn.—42

C. B. Blackburn ..................$5,000.00
B. I. Busby ...................: ...... 2,500.00
C. D. Williford ................... 2,500.00
H. L. Williford ................... 9,100.00

It appears that the B. I. Busby Company as a firm owed a $12,000 note to the Mercantile Bank which was indorsed by the Agar Packing Company. The corporation B. I. Busby Company took the stock of goods that Busby and Williford had, drays, mules, accounts, etc., and assumed this indebtedness of the firm. It appears that, when the corporation took over the assets and assumed the debts of the firm, the indebtedness was explained to the stockholders of the corporation. It appears that the note in question was gradually reduced by payments made by the corporation and renewals to $9,000. It appears that at a directors' meeting of the B. I. Busby corporation, November 12, 1904, B. I. Busby, C. B. Blackburn, H. L. Williford, C. D. Williford, and J. S. Hampton were present. The president explained the note of $12,000 indorsed by the Agar Packing Company, stating that it was simply the renewal of one he had formerly carried with the same indorsement, and that it was for borrowed money from the Mercantile Bank. He stated that it could not be expected that the Agar Packing Company, would again indorse this paper. It thus appears that C. B. Blackburn, the defendant, was present at the directors' meeting when the nature of this obligation was explained. It appears that another directors' meeting was held

January 14, 1905, at which meeting C. B. Blackburn was present. The president stated that he did not want to again ask the Agar Packing Company to indorse this paper. Blackburn in his testimony does not deny that he was present and knew of this announcement. We think from Mr. Blackburn's cross-examination it is evident that he understood that all the notes which had been given in renewal from time to time of the original Agar Packing Company notes, and which were indorsed by the various stockholders of the B. I. Busby Company, corporation, bound all the indorsing stockholders equally. This is our conclusion of the nature of this transaction from an examination of the record. Under the authorities in this State prior to the passage of the negotiable instruments law in 1899, the parties being liable on said note as joint makers were, of course, not entitled to notice of protest and nonpayment. *Bank v. Jefferson,* 92 Tenn., 537, 22 S. W., 211, 36 Am. St. Rep., 100; *Assurance Society v. Edmonds,* 95 Tenn., 53, 31 S. W., 168; *Logan v. Ogden,* 101 Tenn., 392, 47 S. W., 489; *Bank v. Lumber Co.,* 100 Tenn., 479, 47 S. W., 85. In this view of the case, it is an immaterial consideration that the notice of protest was sent to C. B. Blackburn at Laconia, Arkansas. It is insisted, however, on behalf of the defendant, that this rule has been changed by our negotiable instruments act of 1899 (Laws 1899, p. 152, c. 94), and now a party to an instrument who is not a maker, drawer, or an acceptor is an indorser, and therefore entitled to

notice of dishonor. The contention is that when a person's name appears on the back of a note, whether as a regular indorser or as an irregular indorser, he is to be held strictly as an indorser and in no other capacity, unless he clearly indicate by appropriate words written on the note his intention to be bound in some other capacity. The particular sections of the negotiable instruments act relied on are as follows:

"Sec. 63. A person placing his signature upon an instrument otherwise than as a maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

"Sec. 64. Where a person not otherwise a party to an instrument places thereon his signature in blank, before delivery, he is liable as indorser in accordance with the following rules:

"(1) If the instrument is payable to the order of a third person he is liable to the payee and to all subsequent parties.

"(2) If the instrument is payable to the order of the maker or drawer or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

"(3) If he signs for the accommodation of the payee he is liable to all parties subsequent to the payee."

It is argued that, under the express language of section 63 of the negotiable instruments act, C. B. Blackburn must be deemed to be an indorser of the note in question because there were no written words attached

to the indorsement indicating his intention to be bound in some other capacity. It is said this result inevitably follows "unless he clearly indicates by appropriate words," etc.

It is insisted that this construction is reinforced by the language of the succeeding section 64.

Counsel cites *Thorp* v. *White,* 188 Mass., 333, 74 N. E., 592, also the case of *Downey* v. *O'Keefe* (decided in 1905), 26 R. I., 571, 59 Atl., 929.

On the other hand, it is insisted on behalf of the complainant that the negotiable instruments act merely defined what kind of instrument creates a *prima facie* liability as indorser, and that the real contract can be shown now just as it could have been shown before the act was passed.

In Bunker on the Negotiable Instruments Law, the author, after referring to section 66 of the negotiable instruments law of Michigan (Public Act 1905, p. 399, No. 265), which is the same as section 64 of the Tennessee act on the same subject, says:

"This section was construed by the supreme court of New York in *Kohn* v. *Consolidated Butter & Eggs Co.,* 30 Misc. Rep., 725, 63 N. Y. Supp., 265. But the case was outside of the statute, in that it was alleged that the maker made and delivered the note to the payee and that thereafter the other defendants indorsed the note."

McAdam, Judge, said:

"The true intention of indorsers as between them-

selves can always be shown by oral evidence. To go further, and decide that the statute intended to create an incontestable liability against irregular indorsement would be to impute to the legislative wisdom a design repugnant to every notion of judicial procedure, especially in a provision enacted in the interests of law reform."

The case of *Corn* v. *Levy*, 97 App. Div., 48, 89 N. Y. Supp., 658, is cited for the proposition that in the State of New York liability created by the negotiable instruments law is simply *prima facie.*

That was an action upon a promissory note brought against the executors of the first accommodation indorser by the second accommodation indorser who had been compelled to pay a judgment recovered against her upon the note by the payee named therein. The complainant alleged the making and delivery of a note to Kate A. Weichel, which before its delivery to her was first indorsed by the defendant's testator, and then by the plaintiff for the accommodation of the maker. It then alleged presentment, nonpayment, and notice thereof to each of the indorsers; next that thereafter the payee sued the plaintiff as indorser of the note, notice of which action was given to the defendants, and a judgment therein was recovered against the plaintiff for the amount of the note, interest, and costs, which was paid by her. The sum so paid she seeks to recover from the defendants on the indorsement by their testator. Said the court:

"It was formerly the rule in this State that, in the absence of any further agreement, such an indorser would not be liable to the payee of the note. To establish its liability, it had to be shown that he had indorsed the note for the purpose of giving the maker credit with the payee. *Phelps* v. *Vischer,* 50 N. Y., 69, 10 Am. Rep., 433. The same would formerly have applied to the plaintiff, whose liability would spring entirely from a special agreement on her part (beyond that which the law implied upon the mere fact of the indorsement) that such indorsement was for the purpose of giving the maker credit with the payee. . . .

Section 114 of the negotiable instruments law of 1897 (Laws 1897, p. 734, c. 612) provides that, where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser to the payee, and to all subsequent parties, if the instrument is payable to a third person. Before that provision was enacted, a third party could not be charged as an indorser of a promissory note before delivery, unless the complainant alleged that the indorsement was made in order to give the maker credit with the payee, or that the party indorsed the note as surety for the maker. The omission of such an allegation was held to be a fatal defect in an action to charge such an indorser. The necessity of an averment to that effect appears no longer to exist. However, in view of the plain language of section 114 of the negotiable instruments law, it seems to require nothing more than

the simple fact of the indorsement to render the defendant *prima facie* liable in such a case. *McMoran* v. *Lange,* 25 App. Div., 11, 49 N. Y. Supp., 310.

The cases of *Thorpe* v. *White* and *Downey* v. *O'Keefe* are cited by counsel for appellant as announcing a contrary rule. In *Thorpe* v. *White* (June 19, 1905), 188 Mass., 333, 74 N. E., 592, it appeared:

"The defendant Hannah C. Hand irregularly became a party to the promissory note set forth in the bill of complainant, as before delivery she signed her name in blank on the back of an instrument of which the defendant White was the maker and the plaintiff the payee." *Du Bois* v. *Mason,* 127 Mass., 37, 38, s. c., 34 Am. Rep., 335.

The court said:

"According to the law relating to negotiable promissory notes before Statutes 1898 (Laws 1898, p. 502, c. 533) took effect she was liable as a promisor between herself and the plaintiff, although entitled to notice as if she were an indorser when the note was not paid at maturity by the maker [citing cases]. But, after the negotiable instruments act became operative, the distinction was abolished, and the effect of her signature was to make her an indorser as to all parties."

In *Downey* v. *O'Keefe* (January 18, 1905), 26 R. I., 571, 59 Atl., 929, the court said:

"Action on a note by Michael R. Downey against Joseph O'Keefe and another. The note was as follows:

" '$275.00              Providence, March 18, 1899.

" 'Six months after date we promise to pay to the order of Michael R. Downey two hundred and seventy-five dollars at his office, No. 712 Banigan Building, with interest at 5% per month, value received.

" 'JOSEPH O'KEEFE,

" 'DENNIS J. O'CONNER.'

"Upon the back was the signature of John McCann. It was shown in evidence that the note was signed by the makers and delivered to one Hart, the agent of the plaintiff, who took it to McCann, and procured his indorsement. The executor of McCann resisted the suit, and prays for a new trial on the ground that his testator was a mere accommodation indorser, and did not sign until after the delivery of the instrument. . . . It has been uniformly held in Rhode Island until the passage of the negotiable instrument act (Pub. Laws 1898-99, p. 222, c. 674), which does not apply to instruments before July 1, 1899, that one who indorses a note payable to another before its issue is liable to the payee as a joint maker [citing authorities]. It makes no difference whether the signature is actually indorsed upon the note before or after it comes into the possession of the payee, if it is part of the agreement that the note shall be so indorsed to be acceptable [citing authorities]."

We do not think these cases necessarily decide that under the negotiable instrument law an instrument under circumstances like these renders the party absolute-

ly liable as indorser, since no special agreement was shown.

We are of opinion that the real contract between the parties can be shown now as fully as it could have been shown before the passage of the negotiable instrument act, and that, as between the immediate parties, it is not necessary that the indorsement should be accompanied by appropriate words in writing, showing an intention to be bound in some other capacity.

As to innocent holders for value, the rule, of course, would be otherwise, and the statute would apply.

So far from an intention manifested by the legislature to destroy this well-established rule we think section 63 of said act, providing that the person is to be deemed an indorser unless by appropriate words he is bound in some other capacity, is but a legislative recognition of the rule prevailing at the date of the passage of the act.

There is another reason why notice of dishonor of the note in suit was not necessary to be given the defendant C. B. Blackburn. Section 115 of the negotiable instruments act provides that:

"Notice of dishonor is not required to be given to an endorser in either of the following cases:

"1st. Where the drawee is a fictitious person or a person not having capacity to contract, and the endorser was aware of the fact at the time he endorsed the instrument;

"2nd. Where the endorser is the person to whom the instrument is presented for payment;

"3d. Where the instrument was made or accepted for his accommodation."

In our opinion the facts disclosed in this record show that this note was in reality executed for the benefit of every person whose name appears on it. As already stated, it is established in proof that this was an obligation of the B. I. Busby corporation, and that these parties were all stockholders and directors, and that the note was executed for the purpose of renewing an outstanding indebtedness of the corporation. It is in proof that the B. I. Busby corporation received all the assets and assumed all the liabilities of the firm of B. I. Busby & Co. Our conclusion on this branch of the case is that C. B. Blackburn was not entitled to notice of dishonor, since he was a joint maker and equally interested in the note with his co-makers and indorsers. We have also considered the questions made on the alleged alteration of the note, its cancellation, etc., but do not find these assignments of error well taken. It results that the decree of the chancellor must be in all respects affirmed.