### 5546. BROOKE *v.* RUTLAND & COMPANY.

The note in suit was a contract to be performed in the State of Tennessee, and therefore the adjudication is controlled by the statutes of that State as construed by its Supreme Court; and under the ruling of that court in the case of Mercantile Bank of Memphis *v.* Busby, 120 Tenn. 653, the trial judge did not err in overruling the motion for a new trial. It appeared, from the evidence, that the defendant, who had signed his name on the back of the note, had such an interest in the subject-matter as constituted him a quasi-maker, so that the failure to give him notice of the dishonor of the note by the maker corporation, in which he was a director, did not preclude a recovery against him.

DECIDED AUGUST 22, 1914.

Complaint; from city court of Atlanta—Judge Reid. December 13, 1913.

The exception is to the overruling of a motion for a new trial. The motion is upon the grounds that the verdict is contrary to law and to evidence, and that the court erred in excluding testimony

to the effect that the Steel Elevator & Storage Company, the maker of the note sued on, had five directors, two of whom—F. E. Gillette and John E. Bell—refused to indorse it. It appeared that the note was indorsed by the three remaining directors—George W. Brooke, T. J. Brooke, and John W. Gartner. It does not appear that the holder of the note accepted it on condition that it was not to be a completed contract unless signed by all the directors, or that knowledge was brought home to the holder that this condition had been proposed.

*Jones & Chambers,* for plaintiff in error.

*Hughes Spalding,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) Rutland & Company brought suit against George W. Brooke and T. J. Brooke upon a promissory note, executed in behalf of the Steel Elevator & Storage Company, by John W. Gartner, its general manager. The trial judge directed a verdict in favor of the plaintiff, for the principal of the note, with interest. The Brookes moved for a new trial, but George W. Brooke abandoned the motion, and T. J. Brooke alone excepts to the judgment overruling it.

Upon the back of the note appeared the signatures of George W. Brooke, John W. Gartner, and T. J. Brooke; and the plaintiff in error relied, for defense, upon the contention that inasmuch as the contract was executed in the State of Tennessee, and was to be performed there, he was a mere indorser, within the terms of the "negotiable-instruments law" in force in that State, and was relieved from liability by reason of the fact that he was not notified of the maker's dishonor of the note. As appears from the record, the following facts were admitted: (1) That the contract of defendants was a Tennessee contract; (2) that no notice of the dishonor of the note was ever given the defendants by the holder; (3) that before and at the time the note was given, the defendants were stockholders and directors in the Steel Elevator & Storage Company, the maker of the note. Since the case must be adjudicated in accordance with the laws of the State of Tennessee, as construed by the courts of that State, and since the only substantial issue presented is whether T. J. Brooke is to be deemed a mere indorser, or to be held subject to the liability of a maker of the instrument in question, we shall first refer to those sections of the negotiable-instruments law in force in that State which were introduced in evidence in support of the defendants' plea.

As defined in section 29 of the "negotiable-instruments law" of Tennessee, "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to the holder for value, notwithstanding such holder, at the time of taking the instrument, knew him to be only an accommodation party." Section 63 provides that "A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Section 64, apparently referring to irregular indorsements, or the liability for affixing one's signature in blank before delivery, declares that "Where a person, not otherwise a party to the instrument, places thereon his signature in blank before delivery, he is liable, as indorser, in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. (2) If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer. (3) If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee." It is the contention of the defendant T. J. Brooke that he does not fall within the terms of section 64, and that he was absolutely relieved from liability by section 89, which provides that "Except as herein otherwise provided, when a negotiable instrument has been dishonored, . . notice of dishonor must be given to the drawer and to each indorser, and a drawer or indorser to whom such notice is not given is discharged."

The uncontradicted evidence shows that Brooke signed his name on the back of the note before delivery to Rutland & Company, and that the purpose of placing his signature upon the back of the note was to obtain credit for the maker, the Steel Elevator & Storage Company, of which he was a stockholder and director,—so far, at least, as to procure the renewal of a previous obligation of that company; and that he was as much interested in the first obligation as he was in the latter. It appears that the note in suit was given in renewal of a previous note, which represented a debt of the Steel Elevator & Storage Company to Rutland & Company. When this

note was brought to the plaintiffs, signed only by the Steel Elevator & Storage Company, they refused to accept it, and thereupon George W. Brooke proposed to make the note satisfactory if the plaintiffs would consent to carry it a while longer for the Steel Elevator & Storage Company; and later, after the signatures of George W. Brooke, T. J. Brooke, and John W. Gartner had been placed upon the back of the note, the plaintiffs accepted it. It is urged upon our attention that the note did not have the name of T. J. Brooke upon it when the note was first presented to Rutland & Company, and our attention is also called to the fact that T. J. Brooke placed his name upon the back of the note upon the distinct understanding that his indorsement was to become binding only when all the officers and directors indorsed it. It is true that the evidence as to this is uncontradicted, but there is nothing to show that the fact that T. J. Brooke's assumption of liability was conditional upon the signature of other parties, who did not in fact sign the note, was ever brought home to the plaintiffs, or that they had any knowledge that such a condition had ever been proposed. The case, therefore, does not fall within the rule referred to in *Heitmann* v. *Bank*, 6 *Ga. App.* 584 (65 S. E. 590), *Bonner* v. *Nelson*, 57 *Ga.* 433, or *Hansford* v. *Freeman*, 99 *Ga.* 376 (27 S. E. 706). In all of these cases it appeared that the payee was a party to the understanding or agreement that the note in question should not become a complete contract except upon certain conditions precedent, which were not complied with. So the whole question in this case is whether T. J. Brooke, having signed the note before its delivery to the payee, is an indorser or joint maker, under the negotiable-instruments law of the State of Tennessee, as construed by the Supreme Court of that State.

The defendants in error rely upon the decision of the Supreme Court of Tennessee in the case of Mercantile Bank v. Busby, 120 Tenn. 652 (113 S. W. 390) ; and the plaintiff in error relies upon the decision in Pharr v. Stevens, 124 Tenn. 669 (139 S. W. 730). In Mercantile Bank v. Busby, supra, it appeared that Blackburn was a stockholder in B. I. Busby Company, a corporation, and signed his name on the back of a note given by B. I. Busby as an individual, though the proof showed the note was given for the benefit of the corporation. Blackburn denied liability, on the ground that he was a mere accommodation indorser and was not given notice of the

protest of the note for non-payment. It appeared that he was never given notice of the dishonor of the note. The Supreme Court held that he was liable, although the note was given after the passage of the "negotiable-instruments law;" that under that law (Acts of. 1899, ch. 94, secs. 63 and 64), "an indorser of a note in blank before delivery is prima facie, but not absolutely, liable as indorser, for the real contract can be shown, and, as between the immediate parties, it is not necessary that the indorsement should be accompanied by appropriate words in writing, showing an intention to be bound in some other capacity." It was further held that where the stockholders of a corporation indorse in blank, before delivery, a note given to raise money for it and for their own benefit (because made and accepted for their accommodation), they are not entitled to notice of dishonor, and are liable as makers. Under the ruling in that case, the trial judge in this case, while holding that Brooke was prima facie a mere indorser, permitted the introduction of evidence as to the real nature of the contract; and, from the undisputed testimony, it appears that the note was given for the benefit of the corporation, and thus, indirectly, for the benefit of the stockholders. The action upon the note is between the immediate parties. It is true that in that case, as is insisted by counsel for the plaintiff in error, the original debt was that of B. I. Busby & Company, a firm composed of only two of the. stockholders of the corporation, B. I. Busby Company, and it must be inferred that the assumption of this liability was included as a part of the consideration for the transfer of all the assets of B. I. Busby & Company to the corporation in which the indorsers were the sole stockholders, and that the defendant Blackburn knew of the transaction under which he assumed obligation as a stockholder; but the court placed the ruling upon the ground that Blackburn was a maker, because, after all, his indorsement, accepted by the payee, was for the benefit of the corporation and himself. In the present case the testimony showed that the note sued on was given in renewal of an indebtedness for insurance on the property of the Steel Elevator & Storage Company, of which corporation Brooke was not only a stockholder but a director, both at the time the original indebtedness was contracted and at the time the note was presented to obtain his signature, after Rutland & Company had refused to grant any extension unless the payment of the debt was satisfactorily secured. Without going fully

into all the details of the evidence in the record, it seems to us that the signature of T. J. Brooke was as much for his own benefit as the execution of the note by Blackburn, in the case referred to above, was for the benefit of Blackburn. And certainly the signature of the one was as much for the' benefit of the corporation concerned as that of the other, and more apparently for the benefit of the corporation in this case than in that case, for in that case the note was executed by Busby as an individual, whereas in this case the note was signed in the name of the corporation, through its duly authorized general manager.

Counsel for the plaintiffs in error argue that in the present case the original debt was that of the corporation, like any other debt of the corporation, and this liability was not taken over by the corporation from anyone else. In other words, referring, for comparison, to the case of Mercantile Bank v. Busby, supra, it is insisted that the debt in this case "could not in any sense have been figured in as among the assets or liabilities of the corporation when the defendant became a stockholder." We fail to see the point of this argument. It is true that in Mercantile Bank v. Busby it was shown that Blackburn knew the purpose for which the note was being given, while in the case at bar it does not appear that the defendant did not know the purpose for which the note was given. Since Brooke was a director in the Steel Elevator & Storage Company it must be assumed that he was actively concerned in its management, and that he knew what was the real consideration of the note now before us, while, in the case cited, Blackburn, being a mere stockholder and not concerned in the direction of the corporation, could not be charged with constructive knowledge of any details of the corporation's business. However, the general principle upon which it was held in that case that one apparently an indorser might be held to be a maker, although there was no clear indication, by appropriate words, of his intention to be bound as such, as provided by section 63 of the "negotiable-instruments law," was that parol evidence is admissible to show the true relation of the apparent indorser to the instrument, and that if credit was extended upon such a signature, and the signer was directly or indirectly benefited by the acceptance of the note, the ostensible indorser might be treated as a maker, and therefore would not be entitled to notice of dishonor of the note of which he was quasi-maker.

We fail to see that the ruling in Pharr *v.* Stevens, supra, conflicts with the construction placed upon the decision in Mercantile Bank *v.* Busby by the learned trial judge who presides in the city court of Atlanta. In Pharr *v.* Stevens it was ruled that under the "negotiable-instruments law," an accommodation indorser is not liable as a maker, and as a technical indorser he is entitled to notice, and that if not notified of the dishonor of the note, he is released from liability. It is true that in that case it was declared that the ruling in Mercantile Bank *v.* Busby is not authority for the proposition that the "negotiable-instruments law" did not change the rule existing in Tennessee prior to its passage, with respect to contracts of this nature; and, holding that section 64 had in contemplation a case in which a party places his signature upon a note for the purpose of giving the maker credit with the payee, the court declared the liability of such a one to be that of an indorser, in accordance with the three rules set out in that section; but, as was pointed out by Mr. Justice Landsden, the evidence disclosed that Byers, who indorsed the note of Stevens, did not receive any benefit whatever from the proceeds of the note. To show that the decision in that case and the ruling that Byers was a mere indorser hinged upon the principle that where an apparent indorser receives benefit from a note he may be held as a maker, while if he receives no benefit he is a mere indorser, it is only necessary to refer to the fact that both in the headnote and in the body of the decision it was expressly stated that the facts that Byers and Stevens were somewhat intimate, and were mutually interested in some land purchases in Mexico, were too inconclusive to support the inference that any such benefit accrued to Byers as would authorize holding him as a maker.

The lower court's misconstruction of the ruling of the Tennessee trial court in Mercantile Bank *v.* Busby, supra, in so far as that court was of the opinion that the "negotiable-instruments law" of Tennessee did not change the prior ruling, was corrected by the Supreme Court of Tennessee in Pharr *v.* Stevens, supra, but the ruling in Mercantile Bank *v.* Busby upon the precise point now before us was not modified or withdrawn, and the court used no language that indicated that it was not adhered to. As we deem the case at bar to be practically identical with that of Mercantile Bank *v.* Busby upon the facts, it would seem to be controlled by the rul-

ing in that case, if the rule that the statutes of a sister State are to be given the construction applied to them by the courts of that State be adhered to. For this reason we find no error in the judgment of the trial judge overruling the motion for a new trial. Had exception been taken to the directing of the verdict, a different result might have been reached.

*Judgment affirmed. Roan, J., absent.*