(30 Misc. Rep. 725.)

### KOHN v. CONSOLIDATED BUTTER & EGG CO. et al.

(Supreme Court, Trial Term, New York County.   March 19, 1900.)

1. NOTES—IRREGULAR INDORSERS—PRESUMPTIONS—INDORSEMENT AFTER DELIVERY.

Since the negotiable instrument act (Laws 1897, c. 612, § 114), creating a presumption that irregular indorsers of negotiable paper become such with the intent of making themselves liable to the payee thereof, applies only to those who indorse the paper before delivery, plaintiff could not take advantage of the presumption created by the statute, where his complaint alleged that defendants indorsed the note sued on after delivery, but with intent to lend credit to the maker and charge themselves to the payee, but he was bound to prove such allegations of intent by a preponderance of evidence.

2. COMPLAINT—DISMISSAL—PREPONDERANCE OF EVIDENCE.

Where plaintiff failed to establish his case by a preponderance of evidence, but defendants, under their denial, established the contrary by a substantial preponderance, the complaint was properly dismissed.

3. NOTES—ASSIGNMENT AFTER PAYMENT—ACTION.

The payee of a note had it discounted, and on the day it became due he paid it, and subsequently gave the paid obligation to plaintiff to bring action thereon. *Held* that, as nothing more than the payee's equities passed to plaintiff, he could not bring action against so-called irregular indorsers of the note, who did not sign it until after it was delivered to the payee.

Action on a note by Ephriam Kohn against the Consolidated Butter & Egg Company and others.   Complaint dismissed, and plaintiff moves for new trial.   Denied.

Dittenhoefer, Gerber & James, for plaintiff.
Manheim & Manheim, for defendants.

McADAM, J.   The negotiable instrument act (Laws 1897, c. 612, § 114), in regard to "irregular indorsers," applies only to those who place their signatures as indorsers to negotiable paper "before delivery" to the payee.   In such cases the act creates a presumption that, having indorsed the instrument before delivery to the payee, they did so with the intention of becoming liable to the payee, the obligation becoming complete only after such delivery.   Those who seek the benefit of this statute must bring themselves within it by appropriate allegations.   In this instance the plaintiff has, by the allegations of his complaint, put himself outside of the act, and the attempt to claim the benefit of it now is clearly an afterthought. The complaint specifically alleges that the Consolidated Butter & Egg Company made and delivered the note to the payee, Frank Goldstein, and that "thereafter" the other defendants indorsed the note; thereby bringing the case within the common-law rule laid down in the reported cases.   Moore v. Cross, 19 N. Y. 227; Bacon v. Burnham, 37 N. Y. 614, 616; Phelps v. Vischer, 50 N. Y. 69; Coulter v. Richmond, 59 N. Y. 478; Witherow v. Slayback, 158 N. Y. 649, 53 N. E. 681; McPhillips v. Jones, 73 Hun, 516, 26 N. Y. Supp. 101; Howard v. Van Gieson, 46 App. Div. 77, 61 N. Y. Supp. 349; Cuming v. Roderick, 16 App. Div. 339, 44 N. Y. Supp. 1033.   That the plaintiff did this deliberately is manifest from the further allega-

tion (unnecessary under the act in question) that the said other "defendants indorsed the note for the purpose of lending their credit to the maker and with the intent to charge themselves thereon to the payee," Goldstein. Prior to the statute of 1897, supra, the allegation referred to was a necessary one in such cases, and, if denied, the onus of proving the allegation was on the plaintiff, for the payee was presumably the first indorser. Daniel, Neg. Inst. (4th Ed.) § 704; Woods' Byles, Bills, 151, note, and cases before cited. Since the statute the legal presumption is changed where the complaint alleges that the irregular indorsers indorsed the paper "before delivery" to the payee. And when this fact is established the onus is cast upon such indorsers to allege and prove that, notwithstanding such delivery, the payee was to become first indorser according to the customary form of the contract, and that they did not indorse for the purpose of lending their credit to the maker or with the intention of becoming liable to the payee. That this is the proper interpretation of the act is obvious. The true intention of indorsers, as between themselves, can always be shown by oral evidence. Daniel, Neg. Inst. supra; 4 Am. & Eng. Enc. Law (2d Ed.) 492 et seq.; Guild v. Butler, 127 Mass. 386; Cady v. Shepard, 12 Wis. 639; Benj. Chalm. Bills (2d Am. Ed.) 250; Witherow v. Slayback, 158 N. Y. 649, 53 N. E. 681. To go further, and decide that the statute intended to create an incontestable liability against irregular indorsers, would be to impute to the legislative wisdom a design repugnant to every notion of judicial procedure, especially in a provision enacted in the interests of law reform. The plaintiff, having elected to ignore the statute and avail himself of the common-law rule, was bound to prove affirmatively those allegations of his complaint which charge that the irregular indorsers "indorsed the note for the purpose of lending their credit to the maker and with intent to charge themselves thereon to the payee." This allegation the plaintiff not only failed to establish by a preponderance of evidence, but the defendants, under their denial, established the contrary to be the fact by a substantial preponderance, and for this reason the complaint was properly dismissed. Cohn v. Brewing Co., 38 App. Div. 5, 56 N. Y. Supp. 293. The mode of transferring the note to the plaintiff was unique. Goldstein, the payee, first procured the note to be discounted at the Oriental Bank, where he kept his account. By the discount, the bank became the absolute owner of the note. On the morning it matured, and while the bank owned it, Goldstein undertook to sell the note to the plaintiff, and thereafter, and on the same day, Goldstein went to the bank, paid the note, and subsequently handed over the paid obligation to the plaintiff, that he might bring the present action upon it, joining not only the maker, but Goldstein and the other indorsers, as defendants. Assuming that, under the circumstances, Goldstein's title to the note (whatever it was) passed to the plaintiff, he succeeded, at best, to Goldstein's equities,—nothing more. As Goldstein could not have maintained any action on the evidence against the so-called irregular indorsers, the plaintiff occupies no better position.

On the case as presented by the pleadings and proofs, the complaint was properly dismissed, and the motion for a new trial must be denied, but without costs.