(No. 5180.   October 17, 1928.)

C. O. THOMAS, Receiver of THE FIRST NATIONAL BANK OF DUBOIS, IDAHO, a Corporation, Respondent, v. OTTO P. HOEBEL and ROBERT WILLIAMS, Executors of the Will of O. P. WILLIAMS, Deceased, Appellants.

[271 Pac. 931.]

F. J. Cowen, Jones, Pomeroy & Jones and Solon B. Clark, for Appellants.

John W. Jones, Guy Stevens, Peterson, Baum & Clark and G. W. Soule, for Respondent.

HARTSON, District Judge.—The action was originally commenced by The First National Bank of Dubois, Idaho, as payee, on two notes, for $25,000 and $10,000 respectively, executed by the Idaho Realty & Investment Company, a corporation, and indorsed by O. P. Williams, deceased, and five others. The bank became insolvent before trial and the receiver was substituted as plaintiff.

In May, 1923, O. P. Williams, now deceased, James Denning, S. K. Clark, C. A. Doschades, J. P. Jacoby and T. E. Wood (hereinafter called Dubois stockholders), and others, were stockholders of the bank. Then or later E. M. Kennedy, now deceased, L. C. Collins, Alex Younie and others, of Blackfoot, Idaho, became stockholders. On or about May 26, 1923, the bank was in financial distress and its stockholders incorporated the Idaho Realty & Investment Company as a holding company to take over some of the bank's slow and bad paper, in order to comply with examiner's requirements, and to substitute · notes of the Investment Company. The latter company and the bank had the same amount of authorized stock, and each bank stockholder subscribed to a like amount of stock in the Investment Company.

On June 9, 1923, the latter company took over certain assets, to the amount of $25,000, and executed its note to

the bank in that sum. Thereafter, on June 15, 1923, it took over other assets for $10,000, and executed its note to the bank for that amount. Both notes were payable in six months, and were signed by the Investment Company by its president and secretary. At this time the Dubois stockholders were majority stockholders of both bank and Investment Company, and the Blackfoot stockholders held a minority of stock in both companies.

In October, 1923, before maturity of the two notes, the condition of the bank became critical, and about October 20, 1923, some of the Dubois stockholders, with Mr. Young, cashier, went to Blackfoot with a view to securing financial assistance from the Blackfoot stockholders. At a conference it was agreed that Mr. Younie, Mr. Collins and Mr. Kennedy would take over the bank, and the stock of all the Dubois stockholders therein, upon the following conditions: (a) the Dubois stockholders were to pay Younie, Collins and Kennedy one hundred per cent upon their bank stock, (b) they were also to make the two notes good to the bank by indorsing the $25,000 and $10,000 notes in blank, and (c) those who had signed depository bonds of the bank were to agree to remain on such bonds for two years. All the Dubois stockholders, except a Mr. Leonardson, agreed to the indorsement of the notes, and shortly thereafter did indorse them. Mr. O. P. Williams, deceased, was not present at the conference, but was later fully informed and also indorsed the two notes pursuant to the agreement.

The case was tried by the court, without a jury, and the judgment was for plaintiff. Defendants appeal, assigning as errors of law the making of certain findings of fact, conclusions of law, and the judgment for plaintiff on the complaint, and against defendants on their cross-complaint.

A fairly comprehensive statement of defendants' position is as follows: (a) that the indorsements having been made after delivery of the notes, pursuant to an agreement also made after delivery, the liability, if any, was one of guaranty; (b) that such contract is invalid under C. S., sec. 7976, because there is no note or memorandum, and no ex-

pression of any consideration for the indorsement; (c) that no new consideration for the promise is shown; (d) that there is a fatal variance between the pleadings and the proofs; (e) that so far as the payee is concerned, the indorsement was a mere indorsement for accommodation; and (f) that it was a contract for the benefit of a third party, and the beneficiary may not enforce it against the promisor.

Respondent's position may be stated thus: (a) that the liability is not one of guaranty, but is fixed by C. S., sec. 5930, as indorser, and parol evidence is incompetent to show a contrary intention; (b) that the plaintiff is a holder in due course; (c) that a valid consideration for the indorsement is necessary, and has been established; (d) that the contract was between payee and indorser, and rights of third parties are not involved.

Prior to the adoption of the Negotiable Instruments Law, the courts were in irreconcilable conflict regarding the liability of a third party who placed his name in blank on the back of commercial paper. To clear up this situation, and to establish a plain, easily understood rule, and one of universal application, was the purpose of the framers of the law. (*Rockfield v. First Nat. Bank of Springfield,* 77 Ohio, 311, 83 N. E. 392, 14 L. R. A., N. S., 842; 3 R. C. L. 1132, 1133.) This conflict extended to indorsements after delivery. (8 C. J. 83, 84.)

The Negotiable Instruments Law provides (C. S., sec. 5884, subd. 6; sec. 17, U. N. I. L.): " . . . . Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser." (C. S., sec. 5930; sec. 63, U. N. I. L.) "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." And (C. S., sec. 5931; sec. 64, U. N. I. L.) "where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser. . . . . "

In *Kohn v. Consolidated Butter etc. Co.*, 30 Misc. Rep. 725, 63 N. Y. Supp. 265, and *Bender v. Bahr Trucking Co.*, 144 App. Div. 742, 129 N. Y. Supp. 737, it was held that section 64, U. N. I. L. (N. Y. Laws 1897, chap. 612, sec. 114), does not apply to indorsements by a third person after delivery. See, also, *Briscol v. American Southern Tr. Co.*, 176 Ark. 401, 4 S. W. (2d) 912. But neither in those cases, nor in any others involving the question under the Negotiable Instruments Law which have come to our attention, with one exception, did the effect of the other two provisions (subd. 6, sec. 17, and sec. 63, U. N. I. L.) seem to have been considered. The terms of those provisions are not limited to signers before delivery. (8 C. J., p. 84, sec. 130.) And in *Krumm v. El Reno State Bank*, 83 Okl. 177, 201 Pac. 364, where the three sections were considered and discussed, it was held that a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity, and whether he signs the instrument before or after its delivery does not affect his legal status as such. We are in accord with this view. The decedent, who admittedly placed his name in blank on the back of the notes, after delivery, and before maturity, is an indorser, and the fact that he signed after delivery to the payee does not affect his legal status as indorser. (See, also, *Bank of Montpelier v. Montpelier Lumber Co. et al.*, 16 Idaho, 730, 102 Pac. 685.)

Furthermore, it is alleged, in the amended complaint, that prior to the maturity of the notes, in pursuance of an agreement, for a valuable consideration, the decedent indorsed the note by open indorsement, with intent to make the note good and to charge himself to the payee thereof. The findings support and follow this allegation. No question is raised by the appellants upon insufficiencies of the evidence as involved in disputed questions of fact. Thus, aside from statutory liability, the decedent became liable

as indorser by virtue of the contract and intentions of the parties.

Respondent concedes the necessity of a new consideration for indorsements made after delivery, by one other than the payee or holder. (8 C. J. 250.) The contract being in writing, there is a presumption of consideration, and the burden of showing a want of consideration lies with the party seeking to avoid it. (C. S., secs. 5663, 5664 and 5891.) The court found that the decedent and the other indorsers, at the time they indorsed the notes, were majority stockholders of the bank at Dubois, and of the Investment Company, and that the notes were indorsed to make the notes, as assets of the bank, good, and to enhance the value of the bank stock holdings, and to enable the indorsers to transfer their stock in the bank; that said indorsers were liable on their stock under the federal statute if disaster came; that the purchasers consented to accept transfer of the bank stock upon the making of the indorsements, and not otherwise, and to continue the operation of the bank as an active and going concern; that at the time of the agreements the bank was in an embarrassed financial condition, and held a large quantity of slow, doubtful and bad paper.

The court is not permitted to concern itself with the wisdom of the parties in making these agreements. No question is raised as to the capacity of the parties to contract, nor that the transaction was tainted with fraud. It is not difficult to understand that those in control of the Dubois bank, after a long period of concern as to the condition of their institution, faced with the advice of the cashier that new credit was imperative, else he would have to close the bank immediately, should adopt rather desperate measures, even to their own financial detriment, to save it from closing. Nothing is plainer, in the evidence, than the fears of the Dubois stockholders of the consequences of a bank failure, and their desire to be rid of any connection with the bank and its responsibilities. The indorsement of the notes was calculated to, and apparently did, make them good to

the bank. Such indorsements tended to enhance the value of the stock, and enabled the Dubois stockholders to transfer their stock to the purchasers, and the bank was, as a result, reorganized and continued as an active and going concern. There was doubt in the minds of the Blackfoot stockholders as to the value of the Investment Company notes without the indorsements, or they would not have exacted them. It is equally clear that the Dubois stockholders were sufficiently sanguine as to the adequacy of the assets back of the notes, in the hands of the Investment Company, of which they continued in control, to justify the indorsements, and to look to such assets for payment. It is also reasonable to assume that they expected to receive certain benefits through their stock in the latter company. The fact, if it be so, that none of the indorsers later received any benefits from the Investment Company in no way detracts from the fact that they were permitted to continue their efforts to realize in full on the assets.

Any consideration which would support a simple contract is sufficient to support an indorsement made after delivery. (8 C. J., pp. 250, 251, sec. 392; C. S., sec. 5892. It is not necessary that the consideration should pass from the promisee, but may come from a third person who is not a party to the instrument. (8 C. J., p. 213, sec. 348.) Any benefit, profit or advantage to the promisor is sufficient. (8 C. J., p. 212, sec. 347.) We have no doubt that these indorsements were supported by a good and valuable consideration.

The contention that the contract was made for the benefit of a third party is without merit. Appellants argue that the contract was between Kennedy and Williams for the benefit of the bank. This is fallacious. The oral contract made at Blackfoot is not the basis of the action. This suit is founded upon the contract of the decedent evidenced by his indorsements of the notes. Such contract was between Mr. Williams and the bank, and the rights of third parties are not involved. The bank is the direct beneficiary

of decedent's indorsements, and plaintiff is entitled to sue upon them as such.

Nor is there a fatal variance. Those allegations of the amended complaint with regard to the agreement at Blackfoot are manifestly unnecessary to a statement of plaintiff's cause of action, and inaccuracies of allegation in that respect do not affect the cause of action based on the indorsements.

Judgment affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Givens and Taylor, JJ., concur.

Budge, J., took no part in the decision.