(No. 6088.   June 1, 1934.)

FRED G. CALDWELL, Appellant, v. EDWARD Mc-KENNA and H. S. WOODLAND, Respondents.

[33 Pac. (2d) 366.]

Peterson, Anderson & Bowen, for Appellant.

Standrod & Standrod, for Respondents.

GIVENS, J.—About October 16, 1920, the National Bank of Idaho agreed to take over and pay the depositors of the Stockgrowers Bank and Trust Company, and to secure such payments received from the latter, certain securities to be applied as collected, and in addition thereto a promissory note from appellant a stockholder in the Stockgrowers Bank and Trust Company.

In connection with the above transaction certain other stockholders including respondents herein (Edward Mc-

Kenna and H. S. Woodland being the only ones now interested in or affected by this litigation) made an agreement with appellant, the material parts thereof being as follows:

" . . . . That Whereas, on the 13th day of October, 1920, the first parties hereto, for the purpose of assuring the payment of all deposits of the said Stockgrowers Bank and Trust Company to the depositors, entered into an agreement with the National Bank of Idaho, by the terms of which, the said last mentioned bank agreed to take over and assume and pay when and as necessary, all depositors of said Bank and by the terms of which agreement, the assets of said Stockgrowers Bank and Trust Company were assigned to said The National Bank of Idaho as collateral to said obligation, and to further secure the said The National Bank of Idaho, said above mentioned stockholders gave to said The National Bank of Idaho, their certain promissory notes, bearing date of October 13, 1920, due one year after date thereof, and to bear interest at the rate of ten per cent per annum after maturity, interest to be paid quarterly after maturity, copies of said notes being as follows: . . . . "

"And said notes to be paid in the event said assets so assigned to said THE NATIONAL BANK OF IDAHO be not collected within one year sufficient to discharge said obligation so assumed by said The National Bank of Idaho and according to the terms and conditions of that certain contract and agreement entered into on said 13th day of October, 1920, with the said The National Bank of Idaho, which agreement is hereby referred to and made a part hereof. It is, therefore, mutually agreed and understood in consideration of the premises, that the second parties hereto shall reimburse and repay to said first parties for and on account of any monies or things of value that said first parties may be required to pay from said notes in proportion as the amount of the stock in the name of said second parties shall bear to the total issued stock of said Stockgrowers Bank and Trust Company, according to a statement thereof, which is hereto attached and marked 'Exhibit A,'

and made a part of this agreement, it being the purpose of this agreement that all stockholders in said Bank, according to said statement, shall bear their just and true proportion of any amounts that may be required to be paid by said first parties for or on account of the making of said notes; . . . . "

Thereafter this suit was instituted by appellant to compel proportionate contribution by the other parties to the agreement.

The complaint alleges that on or about December 10, 1924, appellant paid the note given by him which amounted principal and interest, to $14,967.20, alleging renewals of the original note and that the collections made by the National Bank of Idaho on the securities assigned to it by the Stockgrowers Bank and Trust Company were insufficient in excess of $15,000, to cover the depositors paid by the National Bank of Idaho.

Respondents' demurrer was sustained by the trial court on the theory that the cause of action accrued in favor of appellant October 13, 1921, and this suit not having been instituted until May 2, 1929, was too late because of section 5-216, I. C. A., being five years on a written contract, and that there was no consideration.

The sequence of events necessary for a proper consideration of the matter is as follows: Appellant's note was made on October 13, 1920; it was due on October 13, 1921, the statutory period of limitations on the obligation of this note was five years ending October 13, 1926; the note was paid December 10, 1924, within such five-year period; suit was brought herein May 2, 1929, within five years after payment was made by appellant on his note, such five-year period ending December 10, 1929.

Respondents urge that the period of limitations as to respondents' contract was coincident with the period of limitations on appellant's note. This overlooks the terms of the contract which define respondents' liability, the essential part being as follows:

" . . . . it being the purpose of this agreement that all stockholders in said Bank, according to said statement, (stockholders and respective holdings) shall bear their just and true proportion of any amounts *that may be required* to be paid by said first parties for or on account of the making of said notes; . . . . " (Italics ours.)

Appellant might have been required legally to pay the note any time within five years after October 13, 1921, because it is apparent from the portion of the second amended complaint above noted that sufficient was not collected within one year after October 13, 1920, to pay the depositors whose accounts had been assumed by the National Bank of Idaho.

Respondents urge that appellant could not by failure to pay sooner, extend the period of limitations.

The condition precedent to appellant being required to pay the note given by him was that sufficient money would not be collected during the year indicated to reimburse the National Bank of Idaho, but as to respondents there was the added prerequisite that *appellant be required to pay.* (Italics ours.)

The complaint alleges and the demurrer admits the happening of both conditions precedent. Respondents' obligation then was to pay appellant their proportionate share of any amount he might be required to pay. The complaint alleges and the demurrer admits that he was not only required to pay, but did pay a specified sum within a time when he was under legal compulsion to so pay.

Respondents rely strongly upon 37 C. J. 953, which evidently influenced the trial court, the text being as follows:

"Where plaintiff's right of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act; . . . . "

It will be noticed, however, that the text says (conceding for the moment that appellant should have paid sooner than he did) that "he cannot suspend *indefinitely* the running of the statute of limitations." Appellant did not suspend or attempt to suspend the statute indefinitely.

It is argued that the giving of the renewal notes without respondents' knowledge or consent permitted appellant to be relieved of the necessity of immediate payment and unduly extended the time and prejudicially affected respondents' rights.

Paragraph IV of the second amended complaint alleges that:

"That thereupon, and upon the final collection and application upon said obligation of such sums realized upon said paper, mortgages and other security so assigned as security, the said National Bank of Idaho advised the plaintiff herein of said facts and demanded payment by him of said $12,000.00 note hereinbefore set out; that said National Bank of Idaho had, up to the time of said demand, and thereafter, until the same was fully paid, required that said note for $12,000.00 hereinbefore described, be renewed from time to time until said National Bank of Idaho could determine the full income and realization from and on account of said notes, mortgages and securities so assigned to said National Bank of Idaho by said Stockgrowers Bank and Trust Company as aforesaid; and on or about December 10, 1924, the plaintiff herein paid said obligation and note hereinbefore described and renewals thereof with accrued interest, amounting, principal and interest, to the sum of $14,967.20."

It is clear that this allegation states that the sum paid December 10, 1924, was on the obligation of the original note. Payment fixes the accrual of the obligation, and it is alleged payment was on December 10, 1924, from which date the statute as to respondents' liability would begin to run. (31 C. J. 440.) Furthermore the renewals did not injuriously or prejudicially affect respondents or release them from liability, because appellant was definitely

and positively, according to the terms of the complaint, required by reason of the giving of the notes, that is, the original notes, because the renewals were based on the originals, to pay within a time when he was legally so compellable, and respondents contracted to pay *any sum* so required. (Italics ours.)

"An extension for a less period than that provided for in the guaranty will not discharge the guarantor." (28 C. J. 1001, note 52.)

The text is applicable because payment was made within the enforceable limits of the original note, beyond that we express no opinion.

■ Appellant concedes that this is not an action for contribution because it is based on contract, while true contribution is not; and perhaps the contract could be appropriately classified as indemnity, the rule there being:

" . . . . There is a breach of the covenant and the indemnitee's right of recovery accrues as soon as he has suffered the loss or damage against which he was to be saved harmless, or the liability against which he was to be protected has become fixed and absolute, and until such time there can be no recovery against the indemnitor." (31 C. J. 438.)

This rule has force in both reason and logic, because while appellant could have been compelled on the 14th of October, 1921, to pay the full amount of his note and could have immediately brought suit against respondents, they did not contract to pay only what he was required on that day to pay, but they contracted without reservation to reimburse him proportionately:

" . . . . of any sums which may be required to be paid by first parties (appellant) on account of said notes, . . . . "

Respondents as well as appellant knew that the binding force and obligation of the note which he had signed was five years from its due date.

In so far as contribution and contracts of similar nature are analogous, the authorities in connection therewith support the conclusion herein. (13 C. J. 833; 6 Cal. Jur. 520.)

It will be noticed that respondents' agreement was not limited to liability but included any amounts that might be required to be paid. In such circumstances the period of limitations under a contract of indemnity or contribution does not begin to run until the damage or loss is sustained by the indemnitee or guarantee. (28 C. J. 990, sec. 149; *Eva v. Andersen,* 166 Cal. 420, 137 Pac. 16; *Boling v. Ashbridge,* 111 Okl. 66, 238 Pac. 421; *Maryland Casualty Co. v. Peppard,* 53 Okl. 515, 157 Pac. 106, L. R. A. 1916E, 597; *Cochran v. Selling,* 36 Or. 333, 59 Pac. 329; *Peterson v. Creason,* 47 Or. 69, 81 Pac. 574.)

The case herein is distinguishable from *Rawleigh Medical Co. v. Atwater,* 33 Ida. 399, 195 Pac. 545. There the obligation was that the party guaranteed would do certain things at a definite date. He failed to do them and the court held the period of limitations began to run from that time. but herein while the note was due on October 13, 1921, appellant was not in fact required to pay until December 10, 1924, when respondents' period under the indemnity contract began to run.

The complaint therefore as against the statute of limitations stated a cause of action.

The contract being in writing a consideration is presumed (sec. 28–103, I. C. A.; *Allis-Chalmers Mfg. Co. v. Citizens' Bank & Trust Co.,* 3 Fed. (2d) 316; *Citizens' Bank & T. Co. v. Pocatello M. & E. Co.,* 41 Ida. 403, 240 Pac. 186; *Thomas v. Hoebel,* 46 Ida. 744, 271 Pac. 931), and furthermore being a mutual contribution or indemnity contract, was supported by a sufficient consideration consisting of the mutual promises of the signers each to the other and payment under such agreement. (13 C. J. 323, 327; *Phillips v. Preston,* 5 How. 278, 12 L. ed. 152; 14 R. C. L. p. 45, secs. 3 and 4; 6 R. C. L., p. 654, secs. 67 and 68; Williston, The Law of Contracts, secs. 102 and 103f; 6 Cal. Jur., p. 168, sec. 117; *Dyer v. McPhee,* 6 Colo. 174; *Rogers v. Kimball,* 2 Cal. Unrep. 725, 49 Pac. 719; *Pacific Coast Casualty Company v. Davis,* 38 Cal. App. 152, 175 Pac. 701; *Knoch v. Haizlip,* 163 Cal. 146, 124 Pac. 998;

*Bacon v. Grosse,* 165 Cal. 481, 132 Pac. 1027; *Dendy v. Russell,* 67 Kan. 721, 74 Pac. 248; *Ferrell v. Millican,* (Tex. (Civ. App.) 156 S. W. 230; *Broadbent v. Johnson,* 2 Ida. 325, 13 Pac. 83.)

The judgment sustaining the demurrer and dismissing the action is reversed and the cause remanded with instructions to reinstate the second amended complaint.

Costs awarded to appellant.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.