UNITED STATES of America,
Plaintiff,
and
Ralph Frazier, Plaintiff in Intervention,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant and Third-Party Plaintiff,

v.

William R. BECKER, Third-Party Defendant.

No. 2213.

United States District Court
D. Idaho, N. D.

Feb. 16, 1961.

Kenneth G. Bergquist, U. S. Atty., Boise, Idaho, for plaintiff.

Hawkins & Miller, Coeur d'Alene, Idaho, for plaintiff in intervention, Ralph Frazier.

Clemons, Skiles & Green, Boise, Idaho, for defendant, Fireman's Fund Ins. Co.

Cox, Ware, Stellmon & O'Connell, Lewiston, Idaho, and Ezra R. Whitla, Coeur d'Alene, Idaho, for third party defendant, William R. Becker.

FRED M. TAYLOR, District Judge.

This action was commenced by the United States pursuant to 15 U.S.C.A. § 714b(c) to recover upon two surety bonds executed by the defendant Fireman's Fund Insurance Company on behalf of Ray Melvin, a warehouseman doing business as Payless Feed and Fuel company in the City of Coeur d'Alene, State of Idaho. The action is based upon the alleged conversion of government grain by Melvin while bonded and conducting said business pursuant to the laws of the State of Idaho. Melvin has been declared a bankrupt and, being unable to satisfy its total losses out of the bankrupt's estate, the United States seeks to recover the balance of its loss from the defendant surety.

To this action Ralph Frazier intervened, alleging similar misconduct on the part of Melvin and the failure to collect from the bankrupt's estate. The defendant surety in turn was granted permission to make one William R. Becker a third-party defendant in order that it might recoup any losses sustained herein pursuant to two indemnity agreements. Becker is the indemnitor in each of the said agreements which were executed with the surety bonds.

Prior to trial the United States and defendant surety settled their controversy. By way of a stipulation for entry

of judgment filed December 5, 1960, these parties agreed upon a judgment of $618.74 on the first surety bond and $25,381.26 on the second bond. The third-party defendant, Becker, consented to the stipulation with respect to the sums due the United States, but denied any liability for the same. Hence, the controversy went to trial on the Intervener's claim against the defendant surety and the latter's claim against the third-party defendant.

These matters were tried before the Court without a jury and taken under advisement. In lieu of oral arguments in support of their respective contentions, the parties were given the opportunity to submit briefs.

The Court will first consider the claim of the plaintiff in intervention, Ralph Frazier (herein referred to as the "Intervener"). His claim is based upon his possession of two warehouse receipts covering his 1954 and 1955 crops of oats which Melvin allegedly failed to deliver upon demand made June 25, 1956. (Intervener's Exhibits Nos. 1 and 2.) To this claim the defendant Surety has asserted two defenses. First, that the warehouse receipts were not delivered by Melvin according to the provisions of the Bonded Warehouse Law, Title 69, Chapter 2 of the Idaho Code, and therefore Intervener's claim is not covered by the bond; and second, that the Intervener's action is barred by the statute of limitations.

With respect to the first contention the Court finds from the evidence that the Intervener sold Melvin all but approximately 20,000 pounds of his 1954 crop of oats for $2,448.54 paid by check June 9, 1956. (Defendant's Exhibit No. 6). That as to the remainder of the 1954 crop and all of the 1955 crop the parties agreed that Melvin should sell the same to a prospective purchaser. This sale failed to materialize and Melvin retained the oats, having transported it from the Intervener's grainery to his warehouse. In the meantime the Intervener learned that Melvin's check covering most of the 1954 crop failed to clear the bank, and, concerned with this fact and the whereabouts of the remainder of the oats, sought out Melvin. On June 25, 1956, Intervener made demand on Melvin for the oats and received from Melvin the warehouse receipts covering the entire two crops. Later the check cleared the bank, but the receipt for the 1954 crop, (Intervener's Exhibit No. 2), was neither canceled or reduced in amount. Intervener testified that at no time did the latter transaction involve a sale, but admits a sale with respect to the majority of the 1954 crop.

Melvin testified, however, that both transactions involved a sale. He stated the sale involving the remainder of the 1954 crop and the entire 1955 crop failed to materialize because the oats were of poor quality. When he notified Intervener of this situtation the Intervener refused to take the oats back. The Intervener, Melvin testified, told him that the oats were his. Shortly thereafter Melvin was declared a bankrupt.

■ From this evidence it is clear that the relationship between these parties was not that of bailor-bailee which normally results from conducting a warehouse business in accordance with the provisions of the Bonded Warehouse Law, supra, and the Uniform Warehouse Receipts Law, Title 69, Chapter 1 of the Idaho Code. The most reasonable inferences which may be drawn from the conduct of the parties here indicates that either a purchaser-seller relationship existed, or, more realistically, that Melvin was acting as the Intervener's commercial agent or factor. The warehouse receipts were not delivered to the Intervener as the bailor of the grain involved, but were given to him by Melvin because the check for the first sale had not cleared the bank and, possibly, in anticipation of similar difficulties in the future with respect to the remaining oats. Under these circumstances the receipts were accepted as a form of security, and in substance do not reflect the underlying transaction which superficially they represent.

■ The Supreme Court of the State of Idaho held in Jensen v. United States Fidelity & Guaranty Co., 1956, 78 Idaho 145, 298 P.2d 976, that a surety for a warehouseman is not liable for the defaults of a purchaser who fails to pay or a factor who fails to account. Since the evidence discloses that the warehouseman here, Melvin, was acting either as a purchaser or a factor who either failed to pay or account, and not as a bailee of Intervener's oats, the Court is of the opinion that the Intervener's action must fail.

■ Assuming arguendo that the warehouseman's bond here does cover the transaction in question, the Court is nevertheless of the opinion that the Intervener's action is barred by the statute of limitation. The Intervener's action is basically one for conversion which accrued when demand was made on June 25, 1956. Under Section 5–218 of the Idaho Code the applicable period in which one must commence an action of this nature is three years. The Intervener commenced his action by filing the complaint here on December 17, 1959, or more than three years after his cause of action accrued.

■■ The Intervener contends, however, that this statute was tolled by petitioning the Commissioner of the Department of Agriculture under Section 69–209 of the Idaho Code before the three-year period of limitation had expired. This statute provides in part that:

"Any person injured by the breach of any obligation to secure which a bond is given, under the provisions of section 69–208, shall be entitled to sue on the bond in his own name in a court of competent jurisdiction to recover the damages he may have sustained by such breach, or may petition the commissioner to fix the amount of his damages. The commissioner shall thereupon make demand upon the warehouseman and his surety for payment of such damages and in the event such damages are not promptly paid the commissioner shall commence an action on the bond to enforce payment of such damages. * * * "

In accordance with this statute the said commissioner did fix the Intervener's damages, but he did not commence an action in his behalf.

Under Section 5–501 of the Idaho Code an action is "commenced" by filing a complaint with the court. The same is true under the Federal Rules of Civil Procedure, Rule 3, 28 U.S.C.A. Commencing an action in this manner does toll the running of the statute of limitation, but the Intervener has submitted no authorities which suggest that merely petitioning an administrative officer of the State of Idaho will toll the same. Warranting an inference to the contrary is the fact that Section 69–209, supra, requires the said commissioner, in addition to fixing damages and making a demand, to "commence an action" when prompt payment of a petitioner's damages is not made. Aside from this inference Section 69–209 is silent on this issue whereas Section 5–218, supra, expressly limits the period for commencing an action of this nature to three years and Section 5–501, supra, clearly states that an action is commenced by filing a complaint with the court. The Intervener's petition to the said commissioner did not constitute "commencing an action" and thus did not toll the running of the statute of limitation.

The Court now turns to the claim of the defendant Surety against its indemnitor, William R. Becker, the third-party defendant, (herein referred to as the "Indemnitor").

■ This action is based on two indemnity agreements. The first agreement was entered into between the defendant Surety and the Indemnitor on July 30, 1954 (Third-Party Plaintiff's Exhibit No. 8), covering the first bond executed by the defendant Surety on behalf of Melvin. By virtue of the aforementioned stipulation the amount of liability involved on this first agreement is

$618.74. The Indemnitor does not seriously oppose his liability to the Surety for this amount. Initially he urged the defense of no consideration, but he has not diligently pursued the same. Suffice it to say that when, as here, the contract is in writing, consideration is presumed. See Caldwell v. McKenna, 1934, 54 Idaho 552, 33 P.2d 366. In fact consideration was given by the Surety when it promised to execute the bond on behalf of Melvin. Therefore, by virtue of this first indemnity agreement, the Court finds the Indemnitor liable to the defendant Surety in the amount of $618.74.

■ The second indemnity agreement was executed between the defendant Surety and the Indemnitor on July 7, 1955, (Third-Party Plaintiff's Exhibit No. 12). It covered the second bond thereafter issued by the Surety to Melvin in the amount of $24,000 for a one-year period beginning July 1, 1955, (Third-Party Plaintiff's Exhibit No. 13). Subsequently, on September 28, 1955, the bond was increased to $31,560, (Third-Party Plaintiff's Exhibit No. 14), but the indemnity agreement was not increased. On the second bond the United States obtained a judgment of $25,381.26 pursuant to the aforementioned stipulation and the Surety now seeks to enforce the second indemnity agreement to recover $24,000 of its loss.

The Intervener denies any liability under the indemnity agreement, contending that the increase of the bond discharged his liability. In support of this contention he urges the general rule of law that any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor from his obligation under his agreement. See Hiern v. St. Paul-Mercury Indemnity Company, 5 Cir., 1959, 262 F.2d 526. However, the Indemnitor presented no evidence or advances no argument which suggests how, or in what manner, his risk has been increased or rights prejudiced under his agreement. The indemnity agreement as between the defendant

Surety and the Indemnitor and the bond as between Melvin and the Surety were separate and distinct contracts. Under the terms of the contract of indemnity, the Indemnitor agreed that the "Company may modify, amend, alter, limit or extend such Bond" without notice. The bond was increased as was the Surety's prerogative under the agreement, but the indemnity contract remained the same, and the defendant Surety makes no attempt to collect any amount above the amount stated therein. Under these circumstances the Indemnitor's obligation remains the same as it was before the bond was increased and there is no evidence to indicate that his liability would now be less than $24,000 if the bond had not been increased. Hence, the above rule of law is not applicable.

■ Indemnitor's other contentions are equally without merit. He cannot escape liability under his indemnity agreement on the ground there was no consideration. His consideration here was the same as it was under the first agreement, supra. Nor can his liability be reduced by crediting him with any sums paid to the United States from the bankrupt's estate as is suggested by a statement in the trustee's report, (Third-Party Defendant's Exhibit No. 16). The matters here were not before the trustee in bankruptcy for determination. His remarks which pertain to the rights of these parties are meaningless and cannot bind this Court.

Accordingly, it is the opinion of this Court that the plaintiff in intervention, Ralph Frazier, take nothing by his complaint and that judgment be entered for the defendant Fireman's Fund Insurance Company and against the plaintiff in intervention. It is also the opinion of this Court that judgment be entered in favor of the defendant and third-party plaintiff against the third-party defendant, William R. Becker, in the amount of $24,618.75 together with a reasonable attorney's fee in the amount of $2,500.

Counsel for Defendant and Third-Party Plaintiff shall prepare Findings of

Fact, Conclusions of Law and a proposed Judgment; serve copies of the same on counsel for the Intervener and Third-Party Defendant, and submit the originals to the Court.