COMMUNITY UNIT SCHOOL DISTRICT NO. 5, COUNTIES OF WHITESIDE AND LEE, Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Third District   No. 80-420

Opinion filed April 22, 1981.—Rehearing denied May 18, 1981.

Robert Potter, of Bull, Ludens, Potter & Burch, of Morrison, for appellant.

Ole Bly Pace, III, of Ward, Ward, Murray, Pace & Johnson, of Sterling, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Country Mutual Insurance Company (hereinafter Insurer) appeals the judgment entered against it by the Circuit Court of Whiteside County in a declaratory judgment suit by Community School District No. 5, Counties of Whiteside and Lee (hereinafter School District). The School District filed a declaratory action seeking judicial determination of the duties and obligations of the Insurer under a school legal liability insurance policy between the School District and the Insurer. The specific issue raised in the declaratory suit was whether the policy provided coverage to the School District with respect to an unfair employment practice action filed by an applicant for a position with the School District. The complaint, seeking money damages as well as installment in the position, was filed with the Fair Employment Practices Commission of the State of Illinois against the School District. The sole issue before the circuit court in this case was the construction of the insurance policy. The court entered judgment in the declaratory action, finding that the Insurer had no duty to directly defend the action filed with the Commission, but that it did have an obligation, under the loss provisions of the policy, to reimburse the School District for any judgment or award that might be levied against it by the Commission, and also for attorneys' fees and

expenses incurred by the School District in the defense of the suit before the Commission. The Insurer appeals from the court's judgment insofar as it held that the Insurer had an obligation to reimburse the School District for judgments or awards in the action and for attorneys' fees and expenses.

The facts are not in dispute. In 1979, the School District, pursuant to its statutory duty to indemnify itself, board members, employees and other personnel from specified damage claims (see Ill. Rev. Stat. 1979, ch. 122, par. 10—20.20), purchased from the Insurer a "School District Legal Liability Policy," with a policy period from March 21, 1979, through March 21, 1980. The policy contained the following pertinent provisions:

"I. COVERAGES A & B—Legal Liability

A. The Company will pay on behalf of the insured, individually or collectively, loss to which the insured may become legally obligated to pay because of a Wrongful Act occurring during the policy period; and

B. The Company will reimburse the School District for all loss for which the School District may be required or permitted by law to indemnify the Insured, individually or collectively, for a Wrongful Act occurring during the policy period."

The definitional provisions set forth the meanings of "wrongful act" and "loss."

"III. DEFINITIONS

* * *

D. Wrongful Act means any and all of the following: actual or alleged errors, misstatement or misleading statement, act or omission or neglect or breach of duty by the Insured, individually or collectively, in the discharge of School District duties, or any matter claimed against them solely by reason of being or having been the Insured during the policy period;

E. Loss means any amount which an Insured is legally obligated to pay or for which the School District may be required or permitted by law to pay as indemnity to an Insured, for a claim or claims made against the Insured, individually or collectively, for which insurance is provided, and shall include but not be limited to damages, judgments, settlements and costs, costs of investigation and defense of legal actions, (excluding from such costs of investigation and defense salaries of officers or employees of the School District or any other governmental body) claims or proceedings and appeals therefrom, costs of attachment or similar bonds, provided always, however, such subject of loss shall not include fines imposed by law, nor that part of any judgment awarded as exemplary or punitive damages; * * *."

The duty of defense is specified in the following provision of the contract:

"II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAY-MENTS

With respect to such insurance as is afforded by this Policy, the company shall:

A. Defend any civil suit against the Insured or any of them, alleging a Wrongful Act which is covered under the terms of this policy, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements, * * *."

During the term of the policy an applicant for employment with the School District who had been turned down, one Belinda Cronin, filed a race and sex discrimination complaint against the School District with the Equal Employment Opportunity Commission and with the Illinois Fair Employment Practices Commission (now the Human Rights Commission). Her claims against the School District were based upon an alleged improper failure to hire, and she requested that the Commission award her money damages and order that she be hired. The claims filed by Cronin with the Fair Employment Practices Commission were tendered to the Insurer for coverage under the terms of the School District Legal Liability Policy. The Insurer refused coverage and refused to provide a defense. The basis for its refusal, according to allegations in the declaratory judgment action subsequently filed, was its contention that the suit filed with the Commission was not a "civil suit" within the meaning of the insurance policy. After the refusal of coverage and defense by the Insurer, the School District defended itself in the Commission proceeding. In addition, the School District filed the declaratory action in the circuit court seeking judicial determination of the Insurer's duties and obligations under the policy.

The circuit court, as previously noted, entered an order finding that, under the terms of the policy, the Insurer had no duty to directly defend the School District in the Commission suit, but that it did have an obligation to reimburse the School District for any damage award and for attorneys' fees and expenses in the defense of the action. The Insurer filed its notice of appeal from the latter conclusion and judgment of the circuit court, and it argues that it had no duty under the policy to reimburse the School District.

■■■ Two basic rules of contract construction are pertinent to the issues raised on this appeal. Both were concisely stated by the Illinois Supreme Court in *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378, 400 N.E.2d 921:

"An insurance policy in which no ambiguity appears is to be read

as any other contract, that is, according to the plain and ordinary meaning of its terms. [Citations.] In order to ascertain the intent of the parties the court should not examine the policy in a vacuum but should look to the circumstances surrounding the issuance of the policy, such as the situation of the parties and the purpose for which the policy was obtained. [Citations.]"

Another established rule is that:

" * * * where language in an insurance policy is subject to different interpretations such ambiguity is to be construed in favor of the insured, and not the insurance company, which drafted the contract of insurance." (78 Ill. 2d 376, 379.)

With these rules in mind, we turn to the policy provisions of the insurance agreement that are pertinent to the issues raised on appeal.

Coverage provided by the policy is stated in section I, subsections A and B, the text of which have been set forth previously herein. In I-A the Insurer agrees to pay the School District for losses which they may become legally obligated to pay because of a wrongful act. In I-B the Insurer agrees to reimburse the School District for all losses that it may be required by law to indemnify an insured for, as a result of any wrongful act. The language with respect to losses for which indemnity is required by law to be provided has a clear referent in section 10—20.20 of the School Code, which requires the School District to provide protection and indemnity for itself and its employees

" * * * against civil rights damage claims and suits, constitutional rights damage claims and suits and death and bodily injury and property damage claims and suits, including defense thereof, when damages are sought for negligent or wrongful acts alleged to have been committed in the scope of employment or under the direction of the board." (Ill. Rev. Stat. 1979, ch. 122, par. 10—20.20.)

The basis of the action, seeking damages, that Belinda Cronin filed with the Commission was that her civil rights had been denied by the discriminatory hiring action of the School District. Such claim and suit is encompassed by the language of section 10—20.20 and also by the language of the coverage provisions in the policy, which have reference to that section's requirements. There is absolutely nothing in the definitions of "Wrongful Act" or "Loss" which indicates that a civil rights claim and suit such as was filed by Belinda Cronin is to be excluded. Instead, the claim and suit before the Commission comes within the definitions of "Loss" and "Wrongful Act" as those terms appear in the policy.

■■ The plain language of the coverage provisions of the policy indicates a clear conclusion that the policy was intended to provide coverage for losses resulting from claims or suits arising from alleged sexual or racial discrimination, regardless of the forum. That conclusion is further but-

tressed when the circumstances surrounding the policy, including the situation of the parties and the purposes for which the policy was obtained, are examined. The most important circumstance has already been mentioned, and that is the statutory requirement, imposed upon the School District, to provide protection and indemnity for itself and school employees against civil rights claims and suits. This statutory requirement is indirectly referenced in the policy itself, as has been noted. Direct reference to a related section of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 10—22.34) is in an endorsement to the policy. The connections between the statutory requirements and the policy to protect against legal liability on the part of the School District are clear, and they form the background for an interpretation of the policy. We find, based upon the plain language of the coverage portions of the policy, examined in light of the surrounding circumstances of the parties in entering into the insurance contract, that the policy provides coverage for losses resulting from claims and suits based upon alleged racial or sexual discrimination.

■■ The Insurer's argument against that result is not based upon the pertinent sections of the policy which set forth the coverage provided by the policy. Rather, the argument is based upon the "duty to defend" provision of the insurance policy and the Illinois rule that the duty to defend is broader than the duty to pay. Defendant argues that since the trial court determined that they had no duty to defend, and since the duty to defend is broader than the duty to pay, therefore they had no duty to pay. This reasoning is urged, based upon *dicta* by the Seventh Circuit in *Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178. We do not agree with its application in the case at bar.

Let us first scrutinize the duty-to-defend provisions of this liability policy:

> "II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS
>
> *With respect to such insurance as is afforded by this Policy,* the company shall:
>
> A. Defend any civil suit against the Insured or any of them, alleging a Wrongful Act which is covered under the terms of this policy, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements, * * * ." (Emphasis added.)

The introductory clause, emphasized above, makes it abundantly clear that in this policy the duty to defend is defined, in part, with direct

reference to the coverage provisions of the policy. That is the plain meaning of the language used in this section of the policy. Thus, the correct analysis and construction of the duty-to-defend provision begins with reference to the coverage provided by the policy. (*Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 815, 386 N.E.2d 529.) The duty-to-defend provision is thus to be construed together with the duty to provide coverage. The *dicta* in the *Solo Cup* opinion did not indicate a contrary rule of construction whereby the coverage provisions would have to be limited by the duty-to-defend provisions. Rather, the court there merely opined that if there was no duty to defend, then there was no coverage under the policy in question in that case. However, in *Solo Cup* a duty to defend was found to be present, and the court did not reach the question of a duty to provide coverage, absent a duty to defend. In the instant case, as noted, the duty to defend is set forth with reference to the coverage provisions of the policy. Therefore, it would be to approach the matter backwards, were we to construe the coverage provisions as defined and limited by the duty-to-defend provision. The correct approach, as noted, is to construe the duty-to-defend provision with reference to the coverage provisions which precede it in the policy. Since we have determined that under the coverage portions of the policy the Insurer was obligated to reimburse the School District for losses suffered in the discrimination suit before the Commission, and since we have concluded that the duty-to-defend provision cannot be construed as a limitation on the coverage provisions, under the language of this policy, we therefore find no error in the court's determination that coverage was required under the policy.

Even assuming, *arguendo*, that the coverage provisions could be limited by the duty-to-defend provisions, we would affirm the action by the circuit court in this case, though on an alternative basis. That basis would be our conclusion that a proper construction of the policy provisions would place both the duty to provide coverage and the duty to defend upon the Insurer in this case. As already noted, this policy specifically states that the duty to defend relates to such coverage as is provided by the policy. As noted, construction of the duty to defend must necessarily begin with an examination of the coverage provisions. Since under the coverage provisions coverage is provided for claims or suits before the Commission, it follows that the duty to defend would also arise unless there are words in the duty-to-defend provision which limit coverage or the defense duty, or both. The defendant Insurer focuses upon the term "civil suit" in the duty-to-defend section and construes it to mean a suit filed in a common law court only, excluding specifically any suit before administrative tribunals or other quasi-judicial bodies. We find such a construction unwarranted in this case. "Civil suit" in the strict sense

of a suit filed in a common law court is a term of art in the legal profession, and such specialized and restricted meaning is not the common understanding and meaning of the term. A suit, in common understanding and meaning, is an attempt to gain legal redress or to enforce a right. It need not be in a common law court, but may be before administrative and quasi-judicial bodies, such as workmen's compensation boards, police and fire commissions, or the Human Rights Commission. The common meaning of suit does not limit it to legal actions in the common law courts. Nor does the adjective "civil," when used in conjunction with "suit," have the meaning of suits in common law courts only. Rather, "civil" is commonly used to denote the noncriminal nature of a suit. Thus, the common and ordinary meaning of the term "civil suit" could be roughly stated to be the prosecution of a noncriminal legal claim or action before a tribunal authorized to hear such claims or actions.

We also note that there is nothing in the insurance policy in question which indicates that "civil suit" is to have the specialized meaning attributed to it now by the Insurer. If the coverage portions of the policy are used to interpret the term, then it would certainly have its more common meaning. Even were we to find that the term, as used, is ambiguous, construction favoring the insured would have to be adopted under established rules of construction. That construction would obviously be that the term was used to denote a noncriminal suit before the Commission. The action before the Commission was a "civil suit" within the terms of the policy and its duty-to-defend provision.

We do not, however, reverse the trial court's finding on the duty-to-defend provision, as no cross-appeal has been filed on that question by the School District.

We affirm the circuit court's judgment finding that the Insurer has a duty to provide coverage to the School District in the event any damages are imposed upon the School District by the Commission and for attorneys' fees and expenses in defending that action.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.