**Larry WERRIES, Director Illinois Department of Agriculture, Plaintiff**

v.

**The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a New Hampshire Corporation, Defendant.**

No. 84–3438.

United States District Court,
C.D. Illinois,
Springfield Division.

Sept. 6, 1985.

Frank Hess, Asst. Atty. Gen., Springfield, Ill., for plaintiff.

Vincent Reilly, J. Calvin Daulton III, Chicago, Ill., Mary Jane Lynk, Springfield, Ill., for defendant.

## ORDER

BAKER, Chief Judge.

This case is a diversity suit seeking enforcement of a monetary judgment from an administrative hearing of the Illinois Department of Agriculture ("Department") which awarded monetary damages to four livestock sellers who had not been paid for cattle delivered to defendant insurance company's principal. Liability is grounded on a surety contract between the Defendant and an Illinois stockyard which had received the livestock from the four claimants who are now represented by the Plain-

tiff in this case. This action was originally commenced by the Department on October 2, 1984, in the Circuit Court of Sangamon County, almost a year and a half after the hearing and after the surety notified the department that it was only liable for roughly half of the liability due to its contract with its principal. This case was removed to this Court from the Sangamon County Circuit Court on November 8, 1984.

Presently before the Court is a motion by the Defendant surety company for summary judgment (11/16/84, docket entry 5).

It is well established that in deciding a motion to dismiss or for summary judgment, the Court must take all inferences favorable to the nonmoving party as true. *Adickes v. Kress & Company*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Egger v. Phillips*, 669 F.2d 497, 502 (7th Cir.1982); *Peoples Outfitting Company v. General Electric Credit Corp.*, 549 F.2d 42, 45 (7th Cir. 1977). If any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant of summary judgment. *Wolston v. Reader's Digest*, 443 U.S. 157, 162 n. 5, 99 S.Ct. 2701, 2705 n. 5, 61 L.Ed.2d 450 (1979); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Further, summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *S.J. Groves v. International Brotherhood of Teamsters*, 581 F.2d 1241 (7th Cir.1978).

## FACTS

The Defendant surety company issued a livestock dealer's bond to Kenneth W. Arzt, who is the resident stockyardman who took delivery of the livestock in question without paying. The transactions between the sellers and this buyer took place between June 30, 1982, and August 9, 1982. (*See* Affidavit in support of defendant's motion for summary judgment, 11/16/82, docket entry 6.) The four sellers made claims with the Packers and Stockyards Administration

pursuant to the Packers an Stockyards Act of 1921. 7 U.S.C. § 181, *et seq.* Only three of the claimants filed in time. However, the Department hearing that was held July 27, 1983, would allow the other claim to be heard because that hearing was, in fact, a "case" or "suit," which was ruled upon by the Department on August 15, 1983. Thus, the second provision of C.F.R. § 201.33(d) was met. (*See infra*). No appeal was taken by the surety company which was represented at the hearing (at least it does not deny that it was not and the plaintiff asserts that the Defendant was present. Plaintiff's reply ... 1/23/85, docket entry 16, p. 2).

## ISSUES

The surety company fights this suit on the ground that the claims of the four sellers were not timely considered because the hearing of the Department was not a "case" or "suit" brought within the time limits set in the bond, which contained the limitations codified in 9 C.F.R. § 201.33(d) which states:

> The surety on the bond, ... shall not be liable to pay any claim if it is not filed in writing within *120 days from the date of the transaction* or which the claim is based, or if suit thereon is commenced *less than 180 or more than 547 days* (which is approximately 18 months from the date of the transaction on which the claim is based. (Emphasis added)).

The Defendant surety company's argument is that this case was not instituted until the Department of Agriculture brought this suit in the Sangamon County Court on October 2, 1984, more than two years after the original transactions. Thus, this case is time-barred because the above regulation requires that any actions on bonds must be brought within approximately eighteen months.

The Defendant argues that the Department hearing held in July of 1983 could not be an action that is contemplated by the above regulation because that would violate the due process clause as it would be unfair for the payee of the bond to adjudi-

cate the liability of that bond. Furthermore, it is argued that the Department of Agriculture is without the statutory power to convene such a hearing for the purposes of determining bond liability. (*See* "Defendant's Memorandum in Response ..." 1/15/85, docket entry 14 for the above arguments.)

## AUTHORITIES

The argument that the Department of Agriculture is without statutory jurisdiction is grounded on the surety company's interpretation of Ill.Rev.Stat. ch. 127 § 40.-23 (1983), which states in part, starting at § 40:

40. The Department of Agriculture has the powers enumerated in Sections 40.1 through 40.29.

. . . .

40.23 Surety bonds and trust funds—Trust accounts and bank accounts—Storage obligations

. . . .

The Department *shall promulgate and file procedural rules and regulations to be followed* concerning the establishment and segregation of trust accounts and bank accounts and *the holding of administrative hearings to identify and verify claimants and claim amounts, to claim and collect the proceeds of surety bonds* and other assets, and to distribute monies in trust funds and bank accounts to claimants. The trustee shall maintain and retain records and make available for audit or review by any person, firm, corporation or government entity such trust accounts and bank accounts, check registers, cancelled claimants' checks, and records accumulated and used by the Department to ascertain the claimants and claims against surety bonds or trust funds. (Emphasis added.)

## I.

█ It is interpreted by the surety company that this statute does not authorize the Department to hold hearings to adjudicate the liabilities of bond companies. However, the opposite is true. The emphasized portions of the above statute give the department the power to "promulgate and file procedural rules and regulations ... concerning the ... holding of administrative hearings ..." The statute does not specifically state who is to hold those hearings, but it does not prohibit the Department from holding them, and there is an inference that the Illinois legislature, through this statute, intended that the department be allowed to hold these hearings.

As to the issue that it is unfair for the payee of a bond to hear and adjudicate the liability, we first can look to statute that expressly authorizes this, Ill.Rev.Stat. ch. 127 § 40.23. Further, though technically the Department is the payee of the bond, it is not the ultimate beneficiary of these bonds. The department is the named payee because at the time the bonds are issued, no one can possibly know who, if ever, is going to be the ultimate beneficiary, as that person is the injured party in some future transaction that has failed. A perfect example is found here in the case before us, wherein the bond between the defendant and its surety (which made the department payee) was executed in 1974 and the claimants did not make the complained of transaction until 1982. Thus, by necessity, the department is made the payee who then becomes trustee for those who, in fact, have been harmed.

It should be noted that the bond in question was executed pursuant to federal law as now codified in 9 C.F.R. § 201.33 and that the claims were filed with a federal agency, the Packers and Stockyards Administration; section 210(b) of Title 7, and 9 C.F.R. § 201.32 expressly authorizes the states to act exactly as the Illinois Legislature has done in promulgating the "surety bond" statute.

The Department had jurisdiction to hold a hearing to determine liability, we must now turn to the issues of whether the claims filed were timely and whether the hearing was a "suit" such that the claims

were timely adjudicated or, if not, whether the claims can still be heard here, as the time limitations were tolled by the Department's hearing.

## II.

■ The next issue before this court is whether the July 2, 1983, hearing of the Department was a proper "suit" within the meaning of 9 C.F.R. § 201.33(d). This court finds that it was a proper "suit."

In answering this question in the negative, the Defendant relies on several cases, such as *Weston v. City Council of Charleston*, 27 U.S. 448, 2 Pet. 449, 7 L.Ed. 481 (1829) which states that a suit is a "very comprehensive term, and is understood to apply to any proceeding." *Id.* 464, and *United States v. Firemen's Fund Insurance Co.*, 191 F.Supp. 317 (D.Idaho 1961), which held that a claim based on a bond liability similar to the one before us could not be considered to have been properly filed if all that was done by the claimant was to register a claim with the Idaho Agriculture Department. Because the Idaho Code of Civil Procedure stipulated that a case could only be properly filed with a court of law if it were to toll the applicable statute of limitations. The Surety Company believes that *Firemen's Fund* should apply to all states and that any filing with any Department of Agriculture cannot be a good suit. But *Firemen's Fund* only turns on a question of Idaho procedural law, and so is not universal. *Id.* at 320–21.

On the other hand, the Plaintiff cites an Illinois case, *Community Unit School District No. 5 v. Country Mutual Insurance Co.*, 95 Ill.App.3d 272, 50 Ill.Dec. 808, 419 N.E.2d 1257 (3d Dist.1981), for the proposition that:

A suit, in common understanding and meaning, is an attempt to gain legal redress or to enforce a right. It need not be in a common law court, but may be before administrative and quasi-judicial bodies, such as workmen's compensation boards, police and fire commissions, or the Human Rights Commission. The common meaning of suit does not limit it to legal actions in the common law courts.

Thus, the Departmental hearing was a proper suit for the purposes of § 201.33(d).

There is also a United States Supreme Court case that generally supports this position, *Herb v. Pitcairn, et al.*, 325 U.S. 77–79, 65 S.Ct. 954, 955, 89 L.Ed. 1483 (1945), which states:

An action is commenced as a matter of federal law when instituted by service of process issued out of a state court, even if one which itself is unable to proceed to judgment, if the state law or practice permits the transfer through change of venue or otherwise to a court which does have jurisdiction to hear, try and otherwise determine the cause ... Clearly, however, when process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment without out issuance of initial process, it is enough to commence the action within the federal statute. (which in this case was the Federal Employers' Liability Act (FELA)).

This case dealt with the question of whether the statute of limitations which governed the bringing of a FELA action had been tolled by the initial filing of a claim with the "city court" of Granite City, Illinois. The Supreme Court held that the claim had properly been filed as the "city court" met the criterion stated above.

In the case before the Court, we must see if the Department's hearing meets the *Pitcairn* test. First, was this action instituted by service of process? In the Department's order that resulted from the hearing, they made a finding that service was proper and in the state complaint filed by the Department it alleges that service on the surety company was proper. There is no denial as to this by the surety. Second, was this case begun on a course of

judicial handling which could lead to final judgment without the issuance of initial process? The Plaintiff takes the position that the Defendant could have appealed the decision of the hearing board by filing a complaint of administrative review pursuant to Ill.Rev.Stat. ch. 110 ¶ 3–101 *et seq.* The filing and service of process of appeals from administrative hearings are practically indistinguishable from filing and the service of process of appeals from the Illinois circuit courts to the appellate courts. (*See* Ill.Rev.Stat. ch. 110A ¶ 11, and Ill.Rev.Stat. ch. 110A ¶ 303(d).) The transfer from the administrative court to the circuit court of the state is similar to the process that is needed when one is appealing the final decision of a trial court. Thus, the second prong of the *Pitcairn* test is met in that once an administrative hearing is properly begun, its decision is final and only appealable to the circuit court, just like an appeal from the circuit court is appealable to the state appellate court. So this case can be considered a "suit" for the purposes of the time limitations period in 9 C.F.R. § 201.-33(d).

## CONCLUSION

The Illinois Department of Agriculture hearing of July, 1983, was the commencement of a suit for the purposes of the applicable regulations. Thus, this action was timely brought and since no appeal was taken within the time limit for appeals from administrative orders (which is 35 days from the date of the hearing order, Ill.Rev.Stat. ch. 110 ¶ 3–103), this action is properly before this Court on the basis of diversity jurisdiction to enforce the judgment rendered at the hearing, and all four claims are valid here.

·It is therefore ordered that the Defendant's Motion for Summary Judgment (filed 11/16/84, docket entry 5) is hereby DENIED as the applicable time limitations of 9 C.F.R. § 201.33(d) were met, as a "suit" was commenced after 180 days but within 547 days of the transactions in question.