239 N.J. Super. 488 (1988)
571 A.2d 1013
CAMPBELL SOUP COMPANY, CAMPBELL SOUP (TEXAS) INC., PLAINTIFFS,
v.
LIBERTY MUTUAL INSURANCE COMPANY; THE HOME INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; AFFILIATED FM INSURANCE COMPANY; CALIFORNIA UNION INSURANCE COMPANY; PRUDENTIAL REINSURANCE COMPANY; EMPLOYER'S MUTUAL INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; GIBRALTAR CASUALTY COMPANY; AIU INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY; ROYAL INDEMNITY COMPANY; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; NEW ENGLAND INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, AND LONDON MARKET COMPANIES; ALLIANZ INSURANCE COMPANY; NORTH RIVER INSURANCE COMPANY; FIREMAN'S FUND INDEMNITY CORPORATION; PACIFIC EMPLOYERS INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY; CENTENNIAL INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; AMERICAN EXCESS INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
August 5, 1988.
*490 George F. Kugler, Jr. (Archer & Greiner, attorneys) and Jerold Oshinsky (Anderson, Baker, Kill & Olick, attorneys) for plaintiffs.
Burchard V. Martin for defendant Liberty Mutual Insurance Company (Martin, Crawshaw & Mayfield, attorneys).
Thomas B. O'Brien, Jr. and Richard M. Shusterman for defendants California Union Insurance Company and Pacific Employers Insurance Company (White & Williams, attorneys).
William J. Brennan, III for defendant Home Insurance Company (Smith, Stratton, Wise, Heher & Brennan, attorneys).
Timothy J. Galanaugh for defendants New England Insurance Company and Allianz Insurance Company (Murphy & O'Connor, attorneys).
Kenneth R. Rothschild for defendant, Granite State Insurance Co. (Goldner, Lintner & Rothschild, attorneys).
*491 Mark Soifer for defendants Gibraltar Casualty Company and Prudential Reinsurance Company (Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys).
James L. McKenna for defendant North River Insurance Company (Deasey, Mahoney & Bender, attorneys).
Robert J. Brown for defendant Employer's Mutual Insurance Company (Chalos, English & Brown, attorneys).
Gerald T. Ford for defendant American Excess Insurance Company (Siff, Rosen & Parker, attorneys).
Barry D. Cohen for defendant Insurance Company of the State of Pennsylvania (Cooper, Perskie, April, Niedelman & Wagenheim, attorneys).
William A. Garrigle for defendant Centennial Insurance Company (Garrigle, Chierici, Palm & Wright, attorneys).
Bruce E. Helies for defendants American Home Assurance Company and National Union Fire Insurance Company (Wolff, Helies & Duggan, attorneys).
Arthur L. Shanker for defendant American Centennial Insurance Company (Weiner, Ostrager, Fieldman & Zucker, attorneys).
William H. Donahue for defendant Federal Insurance Company (Rawle & Henderson, attorneys).
John A. Fratto for defendant Royal Indemnity Company (Fratto, Alessi, Abbott & Fitchett, attorneys).
Brian C. Matthews for defendant Affiliated FM Insurance Company (Tompkins, McGuire & Wachenfeld, attorneys).
Arthur Montano for defendant Youell, Walbrook Insurance Co. (Montano, Summers, Mullen, Manuel & Owens, attorneys).
Jay H. Greenblatt for defendant Firemen's Fund Indemnity Corporation (Greenblatt & Reisenburger, attorneys).
Ralph A. DeSevo for defendant AIU Insurance Company (DeSevo, Cerutti & Lombardi, attorneys).
*492 LOWENGRUB, P.J. Ch.
The narrow issue to be resolved by this court is whether a reasonable cause determination, hereinafter referred to as the RCD, issued May 6, 1986, by the Equal Employment Opportunity Commission (EEOC) compels defendants, pursuant to the terms of their liability policies, to defend plaintiff in the proceedings conducted by the EEOC in response to charges of discriminatory hiring and employment practices.[1] In other words, is the RCD the functional equivalent of a suit so as to compel the insurers, which include plaintiff's primary general liability carriers and umbrella carriers, to defend plaintiff against charges of discriminatory employment practices? The EEOC has not filed suit against plaintiff in a court of competent jurisdiction.
The RCD is a consequence of a charge filed by former EEOC Commissioner Daniel Leach on September 29, 1980. The charge read, in relevant part:
I, Daniel E. Leach, ... am a Commissioner of the Equal Employment Opportunity Commission and that I have cause to believe that Campbell Soup (Texas), Inc., has committed the unlawful employment practices set forth in the foregoing charge.
Six years after the charge was filed, the EEOC issued the above referenced RCD to support the earlier charge of unlawful employment discrimination.
The RCD, which is also referred to by this court as the Leach decision, included a summary of the charge against Campbell and a description of the EEOC investigation into Campbell's business and employment practices. The 26-page decision also summarized the EEOC's findings and conclusions relevant to *493 the charge of employment discrimination. The gist of the RCD is an allegation that Campbell (Texas) discriminated "against blacks and women because of their race and/or sex with respect to recruitment, hiring, assignment, promotion, training, policies and practices, and other terms and conditions of employment."
Plaintiff contends that the RCD is the functional equivalent of a suit as it initiates an administrative procedure which is coercive in nature. Plaintiff also argues that the term "suit," as used in the various insurance policies, is ambiguous and should be broadly construed to include the proceedings before the EEOC. Accordingly, it is plaintiff's position that the issuance of the RCD compels the carriers to defend plaintiff in the EEOC proceeding.
Defendants argue that the RCD is not a suit or the functional equivalent thereof as it does not compel any coercive action against plaintiff. Instead, they contend it merely seeks to place plaintiff in a conciliation mode pursuant to § 706 of the Equal Employment Opportunity Act, 42 U.S.C.A. § 2000e-5(b). Since there is no suit, the contractual predicate to the duty to defend, the carriers argue they need not provide counsel nor pay the costs of counsel engaged by plaintiff to represent it in the EEOC proceeding.

The Legal Analysis.
Resolution of the case at bar requires a review of the following: 1) the applicable provisions of the insurance policies; 2) the law as it pertains to the duty of an insurer to provide a defense to its insured; 3) the relevant sections of the Equal Employment Opportunity Act. 42 U.S.C.A. § 2000e et seq.; and 4) a comparison of the Equal Employment Opportunity Act to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.

*494 1. The Insurance Policies.

The policy issued by Liberty Mutual, the general liability carrier, provides, inter alia,
In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the named insured as follows:
I. Coverage A-Bodily Injury Liability
Coverage B-Property Damage Liability
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A. bodily injury or
Coverage B. property damage
to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.... [Emphasis supplied]
The policy issued by California Union Insurance Company, which issued an "Umbrella Liability Policy" provides, inter alia,
Insuring Agreement
Coverage A  Personal Injury Liability
Coverage B  Property Damage Liability
Coverage C  Advertising Liability
The Company will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of
A. personal injury or
B. property damage or
C. advertising injury
to which this insurance applies, caused by an occurrence, and
(1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or
(2) If limits of liability of the underlying insurances are exhausted because of personal injury, property damage or advertising injury during the period of this policy The Company will
(a) have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or *495 fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.... [Emphasis supplied]

2. The Law on the Duty to Defend.

The duty of the insurer to defend a third-party action brought against the insured arises out of the contract of insurance; if there is no contract to defend, there is no duty to defend. 7C Appleman, Insurance Law & Practice (1979) § 4682 at 27.
For the purposes of this opinion, case law interpreting the duty to defend is grouped into two categories: 1) those cases interpreting whether there is a duty to defend absent the filing of a suit in a court of competent jurisdiction; and 2) those cases interpreting whether there is a duty to defend as a result of the operation of the doctrine of reasonable expectations.
A. The Suit Issue. Plaintiff cites to Solo Cup Company v. Federal Insurance Company, 619 F.2d 1178 (7 Cir.1980), for the proposition that defendants' duty to defend is triggered by the EEOC's issuance of the RCD. In Solo Cup, the issue before the court was whether the trial court erred in holding there was an insufficiency of coverage under the insured's basic general liability insurance policy for sums paid in settlement of an employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C.A. §§ 2000e to 2000e-17 (1970 at Supp. II, 1972). An employee of Solo filed a charge with the EEOC alleging Solo's failure to promote her was a result of sexual discrimination. Thereafter, EEOC filed a complaint against Solo in the United States District Court, Northern District of Georgia seeking compensatory and injunctive relief for an alleged class of female discriminatees. 619 F.2d at 1182.
During the pendency of the EEOC action, the General Services Administration (GSA) commenced a separate on-site review of one of Solo's facilities to determine whether Solo was in compliance with a designated executive order. That review resulted in an administrative allegation by GSA that Solo had *496 discriminated against a number of female employees with respect to job placement. At the time the Solo Cup opinion was written, no proceedings had been instituted to enforce the liability alleged by GSA against Solo. The insurer disclaimed coverage as to the action filed by the EEOC in federal court on the basis that the pleadings failed to allege an insurable occurrence. As to the claim asserted by the GSA, the carrier disclaimed coverage positing the proceeding was merely investigative, and, therefore, its duty to defend did not yet attach.
The court found that the complaint filed by the EEOC in the federal district court did allege a cause of action which, if proven, constituted a claim within the coverage of the policy. Therefore, the court held, pursuant to Illinois law, that the insurer breached its contractual obligation to defend by failing to provide a defense to its insured.
The court reached a different conclusion as to whether the insurer had a contractual obligation to defend the insured in the GSA proceeding. While the court held that the insurer had the duty to defend the insured where a suit had been filed in a court of competent jurisdiction, it left for another day the resolution of whether there is a duty to defend absent a judicial proceeding. In the GSA matter there were no adjudicatory proceedings taking place in any forum.
The Solo court relied upon the language of the insurance policy in determining that the insurer had a duty to defend the insured in the EEOC proceeding but not in the GSA proceeding. The court noted that the policy obligated the carrier to "defend any suit against the insured," while the indemnity provisions only obligated the insurer to indemnify Solo for all sums paid by reason of liability imposed by law. 619 F.2d at 1188, n. 7. Further, the court stated:
In light of this language in the indemnity provisions, we think that the duty to defend `suits' might in some circumstances be triggered by adjudicatory proceedings before an administrative body. This conclusion follows from the fact that under Illinois law, the duty to defend, while independent of the duty to indemnify, is the broader of the two. Further, the word `suit' contained in the *497 defense provision is ambiguous, see, e.g., Webster's New Unabridged International Dictionary (2d ed.) (defining `to sue' as `to seek justice or right ... by legal redress'), and must therefore be construed liberally in favor of the insured. J.L. Simmons Co., Inc. v. Fidelity & Cas. Co., 511 F.2d 87, 90 (7th Cir.1975). [Id. at 1188]
An analysis of the quoted language compels the conclusion that the duty to defend is triggered when the insured is involved in an adversarial proceeding, a consequence of which is the factual determination that legal liability may or may not be imposed upon the insured. It matters not whether the factual determination is made by a judicial body after the filing of a complaint and a plenary hearing, or whether the determination is made by an administrative body which has the authority to impose liability upon the insured. It is not the forum in which the proceeding is held that is critical, but whether, as a result of the hearing, liability may be imposed.
The issue left open by the Solo Cup court was adjudicated by the Oregon Court of Appeals in School District No. 1 v. Mission Insurance Co., 58 Or. App. 692, 650 P.2d 929 (App.Ct. 1982). In that case the Oregon court held that the insurer had a duty to defend its insured in an adjudicatory proceeding before an administrative body. 650 P.2d at 932. In the Mission case, a number of complaints were filed with the Oregon Bureau of Labor (BOL) charging that the school district engaged in discriminatory practices. Judith Dean, a school district employee, was the only complainant to file charges at both the BOL and EEOC. All other complainants filed exclusively with the BOL. Moreover, the defense costs claimed by the insured as to the Dean complaint were limited to those costs incurred after the filing of a suit in federal court. Id. at 939. The insured's errors and omission policy contained language imposing upon the insurer the duty to defend the district in any suit against it seeking damages.
In analyzing whether the duty to defend attached subsequent to the BOL's finding of substantial evidence of employment discrimination, the court wrote "[T]he Commissioner of the *498 BOL was authorized to enter an order requiring the district to compensate victims of discrimination for the pecuniary losses they suffered." Id. at 937. Moreover, the court stated "it makes particular sense for the insurer to defend before the BOL, because the parties only get to court on appeal from what has occurred before the agency." Id. at 937, n. 6. Accordingly, the appellate court upheld the trial court's ruling that the primary and excess carriers had a
duty to defend the district as to each discrimination claim from the point in time when there was "a) an action, suit or claim filed in Court or b) an administrative finding or determination [by the Oregon Bureau of Labor or the Equal Employment Opportunity Commission] of substantial evidence to support the complaint or charge." [Id. at 932].
Despite the rather sweeping language of the above cited holding, I find the Mission case does not stand for the proposition that the RCD triggers the duty to defend. That issue was not before the Oregon court as the school district did not seek to recover costs associated with defending the Dean claim while that particular complaint was in an administrative posture. Accordingly, I conclude that the Mission opinion is not persuasive authority on the issue at bar.
Plaintiff also relies on the Community Unit School District No. 5 v. Country Mutual Insurance Co., 95 Ill. App.3d 272, 50 Ill.Dec. 808, 419 N.E.2d 1257 (App.Ct. 1981), to support its contention that the RCD triggers the duty to defend. In that case, the insured brought a declaratory judgment suit seeking a determination that the insurer was obligated to defend it against a charge of discriminatory hiring practices. Though the complainant filed charges with both the Illinois Fair Employment Practices Commission (FEPC), which is now known as the Human Rights Commission, and the EEOC, the insured demanded a defense for the FEPC claims only. 50 Ill.Dec. at 810, 419 N.E.2d at 1259. The court makes no further reference to the status of the claims filed with the EEOC.
The insurer refused to defend its insured against the charge filed with the FEPC. Defendant argued that consistent with *499 the language of the insurance contract, the duty to defend did not attach as no civil suit had been filed in a common law court. Id. 50 Ill.Dec. at 812, at 1261. The court rejected defendant's definition of a civil suit as narrowly legalistic. Ibid. Instead the court determined that the term "civil suit" is broad enough to embrace proceedings "before administrative and quasi-judicial bodies, such as workmen's compensation boards, police and fire commissions, or the Human Rights Commission." Ibid. Accordingly, the court, in dictum,[2] stated that the insurer had a duty to defend, as the aggrieved in the FEPC action sought to gain legal redress and the enforcement of a right.
I find that an FEPC proceeding is distinguishable from an EEOC proceeding. Unlike the EEOC, the FEPC, which is now known as the Human Rights Commission, is empowered to enter an order compelling the employer to take specific action which it would not do on a voluntary basis. Ill.Stat., Chapter 68, ¶ 8-108. By contrast, the EEOC is not statutorily empowered to enter a coercive order against an employer even though it is authorized to initiate conciliation proceedings. Indeed, an employer can refuse to attempt conciliation even though such a decision may precipitate the filing of a suit in a court of competent jurisdiction. A court of competent jurisdiction and the FEPC are empowered to enter an order which legally obligates the employer to take specific action and pay damages to the aggrieved. Under 42 U.S.C.A. § 2000e-2 et seq., the EEOC does not have the authority to enter such orders. For all these reasons, I find that the Illinois opinion does not furnish plaintiff with persuasive authority.
B. The Reasonable Expectations Doctrine. In addition to the theory of recovery predicated on its interpretation of the contract language, plaintiff also refers to the doctrine of *500 reasonable expectations of the insured to compel defendants to provide a defense to the claim before the EEOC. The application of that rule allows the court to give effect "to the `objectively reasonable expectations' of the insured for the purpose of rendering `a fair interpretation' of the boundaries of insurance coverage." Broadwell Realty v. Fidelity, 218 N.J. Super. 516, 524, 528 A.2d 76 (App.Div. 1987) (citing Meier v. N.J. Life Ins. Co., 101 N.J. 597, 612, 503 A.2d 862 (1986), citing Di Orio v. N.J. Mfgr. Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979)). Consonant with that doctrine, in the interpretation of insurance contracts, ambiguities are to be construed in favor of the insured and against the insurer. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 208 A.2d 638 (1965). Plaintiff contends the word "suit" as used in the policies issued by defendants is ambiguous and should be construed in favor of the average insured to include any action brought against an insured to which it is compelled to respond.
In the cases relied upon by plaintiff, the court invoked the doctrine of reasonable expectations after the following events occurred:
1) a third party filed a claim against the insured which exposed it to a potential legal liability, and
2) the insurer denied any contractual duty to defend.
Unlike the insurers in the case at bar, the insurers in the above cited cases never disputed the existence of a suit. Indeed, unlike the insurers in Broadwell, Meier and Di Orio, defendants in the case at bar never reach the issue of whether the RCD alleges an insurable event. Instead, the insurers dispute the threshold issue of whether the RCD is a suit within the meaning of the language of the policies. In other words, defendants' position is that there is no need to argue whether the RCD alleges an insurable event as the RCD does not seek to impose legal liability upon the insured, and is therefore not a suit. I agree with defendants' reasoning and I find plaintiff's reliance on the reasonable expectations doctrine to be inappropriate *501 as it presupposes the existence of a suit, the threshold issue which is before this court for determination.

3. Statutory Analysis.

A review of the Equal Employment Opportunity Act, 42 U.S.C.A. § 2000e-2 et seq., and the procedural regulations of the Equal Employment Opportunity Commission, 29 C.F.R. § 1601.1 et seq., do not support plaintiff's contention that the issuance of the RCD initiates a coercive process.
The heart of the Equal Employment Opportunity Act, as amended, is contained in 42 U.S.C.A. § 2000e-5(b) which provides:
Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, ... alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer ... within ten days, and shall make an investigation thereof.... If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.
Section 1601.24 of the procedural regulations of the EEOC provide further insight as to the nature of the conciliation processes referred to in 42 U.S.C.A. § 2000e-5(b). Section 1601.24 provides:
(a) Where the Commission determines that there is reasonable cause to believe that an unlawful employment practice has occurred or is occurring and after the review provided for in § 1601.19, the Commission shall endeavor to eliminate such practice by informal methods of conference, conciliation and persuasion. In conciliating a case in which a determination of reasonable cause has been made, the Commission shall attempt to achieve a just resolution of all violations found and to obtain agreement that the respondent will eliminate the unlawful employment practice and provide appropriate affirmative relief.
If an agreement is reached through the conciliation process, in order for it to be binding it must be signed by the charging party, the employer and the EEOC. 29 C.F.R. § 1601.24
An analysis of the statute and relevant procedural regulations makes it clear that the conciliation proceeding is voluntary and not coercive, as posited by plaintiff. 42 U.S.C.A. *502 § 2000e-5(b), 29 C.F.R. § 1601.24. This is not to suggest that the conciliation proceeding is a friendly or pleasant event. However, it is undisputed that the employer cannot be forced to enter conciliation talks. The employer may attend meetings or not. The employer may agree to the terms of a settlement or not. The statute does not empower the EEOC or a court of law to impose sanctions on the employer who refuses to conciliate or to reach an agreement. Nor can any of the statements made by the employer during the conciliation phase be used against the employer. Indeed, section 1601.26 of the regulations guarantees the confidentiality of the endeavors. This section states:
Nothing that is said or done during and as part of the informal endeavors of the Commission to eliminate unlawful employment practices by informal methods of conference, conciliation, and persuasion may be made a matter of public information by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. [29 C.F.R. § 1601.26(a)].
Moreover section 706 of the act provides that anyone, who makes public information obtained during the investigation or conciliation proceeding, faces a fine of up to $1,000 or imprisonment for not more than one year or both. This guarantee of confidentiality may be analogized to the general social policy which supports the rule excluding offers of settlement as evidence of an admission of liability. Evid.R. 52(1).
In the event that conciliation efforts fail or the employer refuses to conciliate, the EEOC may initiate a civil action pursuant to 42 U.S.C.A. § 2000e-5(f)(1). This section states:
If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent ... named in the charge.
... (If) the Commission has not filed a civil action under this section ... or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, . .. shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.
*503 If the EEOC determines not to bring suit, the parties are notified in writing of the failure to reach an agreement through conciliation and the employee charging unlawful employment discrimination is issued a right-to-sue letter. 42 U.S.C.A. § 2000e-5(f)(1); 29 C.F.R. §§ 1601.27, 1601.28.
In the case at bar, Campbell Soup Co. (Texas), Inc. is in the conciliation phase of the EEOC process. No suit has been instituted against it by the EEOC. No adjudicatory proceeding has been held during that conciliation process. Further, Campbell need not participate in that process if it does not voluntarily agree to so do. It is only after a suit is brought in the federal district court by the EEOC, or the aggrieved employee or prospective employee, that an adjudicatory process commences. It is then, for the first time, that the obligation of the insurer to defend should properly be raised.

4. The Analogy to Environmental Law.

Plaintiff asserts that the RCD issued by the EEOC carries the same mandate to compel compliance as a directive letter issued by the New Jersey Department of Environmental Protection (DEP) requiring a responsible party to cleanse a site contaminated by toxic substances. The predicate for plaintiff's position is found in the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. Section 23.11f.a. provides, inter alia:
a. Whenever any hazardous substance is discharged, the department may, in its discretion, act to remove or arrange for the removal of such discharge or may direct the discharger to remove, or arrange for the removal of, such discharge. If the discharge occurs at any hazardous or solid waste disposal facility, the department may order the facility closed for the duration of the removal operations. The department may monitor the discharger's compliance with any such directive. Any discharger who fails to comply with such a directive shall be liable to the department in an amount equal to three times the cost of such removal, and shall be subject to the revocation or suspension of any license or permit he holds authorizing him to operate a hazardous or solid waste disposal facility.
The New Jersey Supreme Court characterized the provisions of N.J.S.A. 58:10-23.11f.a. as "indisputably coercive" as they *504 have "the purpose and the effect of compelling persons to pay money to the State, even if those persons have a valid claim that they are not justly or legally responsible for payment." Matter of Kimber Petroleum Corp., 110 N.J. 69, 78, 539 A.2d 1181 (1988). The recipient of a directive letter from the DEP is not to be envied. The recipient can comply with the letter and cleanse the site or resist and face the possibility of incurring treble damage liability. The alleged polluter cannot demand an adjudication of liability before deciding whether to comply or resist the dictates of the directive letter. See id. at 91, 539 A.2d 1181 (Wilentz, C.J., dissenting). In other words, the Spill Compensation and Control Act does not allow the alleged discharger to initiate a judicial challenge to the validity and scope of the directive letter. See Woodland Private Study Group v. State of N.J., 616 F. Supp. 794, 802 (1985). See, however, Kimber, supra for the holding of the Court that
(1) a good-cause defense by necessary implication is provided under the treble damages provision of the Spill Act, (2) good-cause defenses include challenges to the reasonableness of the costs assessed, and (3) the DEP has the authority to seek removal costs from dischargers while controlling remedial action and obtain treble damages upon failure to pay such costs. [110 N.J. at 86, 539 A.2d 1181]
The Legislature's resolve to control the enormity of New Jersey's toxic tort problem is evident throughout the entirety of the Spill Compensation and Control Act. Indeed, the Legislature's intent to regulate the discharge of chemicals into New Jersey's lands and waters is codified in N.J.S.A. 58:10-23.11a, which reads, in pertinent part, as follows:
The Legislature intends by the passage of this act to exercise the powers of this State to control the transfer and storage of hazardous substances and to provide liability for damage sustained within this State as a result of any discharge of said substances, by requiring the prompt containment and removal of such pollution and substances, and to provide a fund for swift and adequate compensation to resort businesses and other persons damaged by such discharges....
In view of the foregoing analysis, it seems clear that the predicate for the DEP's authority to act in a summary fashion so as to compel compliance with an "indisputably coercive" *505 (Kimber supra, 110 N.J. at 78, 539 A.2d 1181) demand letter is rooted in legislation created to address an enormous environmental problem which requires a great deal of money for the "containment and removal of such pollution and substances and to provide a fund for swift and adequate compensation...." N.J.S.A. 58:10-23.11a.
Moreover, I find plaintiff's reliance at oral argument on the Appellate Division's opinion in Broadwell v. Fidelity, 218 N.J. Super. 516, 528 A.2d 76 (App.Div. 1987) to be inappropriate. Unlike the case at bar, the Appellate Division did not adjudicate the insurer's obligation to defend. Instead, the Appellate Division decided that the expenses incurred by Broadwell in its effort to comply with the DEP cleanup directive fell within the indemnification provision of the general liability policy issued by the insurer. In holding for the insured, the court stated its decision was predicated upon the rules of law to be applied in the interpretation of an insurance contract. The court found:
... that the DEP's directive which threatened to assess Broadwell an amount equal to triple the costs of the prospective cleanup operation constituted a claim for damages within the meaning of the policy language. The insured's expenditures were made to discharge its legal obligation to the DEP or, at the very least, to prevent what would have been an avoidable legal obligation to pay damages to a third party. The expenses were incurred by virtue of the in terrorem and coercive effect of the DEP's directive. The harm to the State, by reason of the discharge of pollutants into its streams, and to others was continuing and ongoing. Further peril was both imminent and immediate. Under these circumstances, the abatement and response expenses constituted `damages' which Broadwell was legally obliged to pay. [218 N.J. Super. 527-528, 528 A.2d 76]
It is clear that discrimination because of race, color, religion, sex or national origin in hiring and employment practices is unlawful and not to be tolerated. See 42 U.S.C.A. § 2000e-2 and New Jersey Anti-Discrimination Law, N.J.S.A. 10:5-1 et seq. and -3, which articulates the legislative policy against discrimination.
Despite the immorality implicit in the practice of discrimination and the severity of the impact of employment discrimination on our society, it is undisputed that Congress enacted a *506 conventional approach to the problem. By enacting the Equal Employment Opportunity Act, Congress demonstrates its clear preference for investigation, conciliation and adjudication, if necessary, before imposing a legal obligation on the employer. Congress did not empower the EEOC to direct, by fiat or summary order, respondent to pay damages or face the risk of exposure to treble damage liability.
In contrast to the congressional approach, the New Jersey Legislature, in responding to the immediacy of the toxic tort problem, enacted a non-conventional procedure so as to effect swift relief. The Spill Control and Compensation Act compels responsible parties to comply with a DEP directive or face the possibility of treble damages, subject to a good-cause defense, before liability has been adjudicated. This unconventional approach was precipitated by the immediacy of New Jersey's hazardous waste problem.
The conventional approach  a suit by the DEP to establish liability, a judgment requiring the defendant to clean up or to pay for the cleanup, and ultimately further orders to compel compliance (including orders holding defendant in contempt, setting a date for compliance, extending the date, and so on)  was deemed inadequate for the solution of the problem. [Kimber, supra, 110 N.J. at 89, 539 A.2d 1181 (Wilentz, C.J., dissenting)]
The difference in the approach between that taken by the New Jersey Legislature and United States Congress could not be more extreme. It is the difference between the iron fist and the silk glove. Accordingly, I find as a matter of law that pursuant to the terms of the general liability policies, defendants' duty "to defend any suit against the insured seeking damages" has not been triggered by the EEOC's issuance of the RCD.
Accordingly, defendants do not have an obligation to reimburse plaintiff for the costs incurred in responding to the EEOC proceedings. No costs.
NOTES
[1] The current demand for reimbursement and continued defense is a modification of plaintiff's original demand. Initially, plaintiff sought reimbursement for all defense costs incurred from September 29, 1980, when the EEOC notified plaintiff that aggrieved employees filed charges with it against Campbell (Texas). Subsequently, plaintiff's counsel limited its demand for reimbursement for costs incurred since May 6, 1986, the date the EEOC issued its RCD.
[2] This holding is dictum as the school district failed to cross-appeal the trial court's decision that the insurer had no duty to defend plaintiff even though the trial court held the insurer had a duty to indemnify the insured. 50 Ill.Dec. at 813, 419 N.E.2d at 1262.